# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **INTELLIGEN POWER SYSTEMS, LLC,** | **CIVIL ACTION NO. 14-cv-07392-PAE** |
| **Plaintiff,** | **HON. JUDGE PAUL A. ENGELMAYER** |
| **-against-** | |
| **dVENTUS TECHNOLOGIES, LLC,** | |
| **Defendant.** | |

## DVENTUS'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED.R.CIV.P. 12(B)(6) AND 9(B)

## TABLE OF CONTENTS

INDEX OF AUTHORITIES..............................................................................................iii

INTRODUCTION ..........................................................................................................1

BACKGROUND .............................................................................................................2

A.      THE PARTIES ...................................................................................................2

     1.      dVentus and CEO Daniel Gizaw ...................................................2

     2.      Intelligen and CEO David Lesser ...........................................3

B.      THE CONTRACT AND NEGOTIATIONS ....................................................3

C.      THE ALLEGED BREACH, FAILURE TO CURE, AND TERMINATION....................4

STANDARD OF REVIEW ..............................................................................................5

I.      INTELLIGEN'S FRADULENT INDUCEMENT CLAIM IS LEGALLY
AND FACTUALLY DEFICIENT AND SHOULD BE DISMISSED. ............................7

A.      The Representation that Daniel Gizaw Has Electrical Engineering Capability .................8

B.      All Eleven Representations Relate to Performance Under the Contract and
Cannot Support Fraudulent Inducement. ...............................................8

C.      Four of the Eleven Representations Fail to Meet the 9(b) Basics.............................11

D.      Five of the Eleven Representations Are Non-Actionable Statements of Future
Conduct or Expectation. ...............................................12

E.      The Statements of Opinion Alleged by Intelligen are Not Actionable in Fraud..............13

F.      Intelligen Fails to Allege Facts Explaining the Falsity of Any Representation...............13

G.      None of the Eleven Allegations Are Supported by Facts Establishing
Intent to Defraud. ...............................................15

H.      Intelligen Fails to Allege Materiality of Any Representation .....................................17

I.      Intelligen Fails To Allege Actual or Justifiable Reliance..................................17

J.      Intelligen's Fraudulent Inducement Claim Should Be Dismissed If Any One
of the Representations Is Determined To Be Legally Or Factually Deficient..................17

i

II.      PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST THE DEFENDANT FOR BREACH OF CONTRACT (COUNT II) ...............................................................18

A.      Upon Cancellation of an Order, Intelligen Must Pay for Work Performed Less Salvage Value. ......................................................................................................18

B      Intelligen's Fails to Adequately Allege a Breach of Contract Concerning a 16-Week Delivery Date .............................................................................................19

C.      The Breach of Contract Claim Must Be Dismissed Because dVentus Cured Any Alleged Breach. ........................................................................................22

D.      The Breach of Contract Claim Must be Dismissed Because dVentus Did Not Fail to Deliver Within a Reasonable Time under New York Uniform Commercial Code §2-309(1). .......23

E.      The Breach of Contract Claim Must be Dismissed Because the Complaint Fails to Allege Damages. ................................................................................23

III.      PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST THE DEFENDANT  FOR REPLEVIN (COUNT III) ...............................................................................24

# INDEX OF AUTHORITIES

## CASES

*Acito v. IMJCERA Grp. Inc.,*
    47 F.3d 47 (2d Cir. 1995) ..................................................................................................... 15

*Allison v. Round Table Investment Management Co., LP,*
    No. 10 CV 01144(GBD), 2010 WL4456648 (S.D.N.Y., Oct. 22, 2010) ............................... 15

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................................. 5

*ATSI Commc'ns v. Shaar Fund Ltd,*
    493 F.3d 87 (2d Cir. 2007) ................................................................................................... 7

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................................. 5

*Berman v. Morgan Keegan & Co.,*
    455 Fed.Appx 92 (2d Cir. 2012) ......................................................................................... 6

*Braddock v. Braddock,*
    60 A.D.3d 84, 871 N.Y.S.2d 68 (1st Dep't 2009) ................................................................ 7

*Bridgestone/Firestone,*
    98 F.3d 13 (2d Cir. 1996) ..................................................................................................... 9

*Brown v. Lower Brule Cmty. Dev. Enter., L.L.C.,*
    No. 13-CV-7544 PKC, 2014 WL 5508645 (S.D.N.Y. 2014) ................................................ 20

*Carvel v. Ross,*
    No. 09 Civ. 0722(LAK), 2011 WL 856283 (S.D.N.Y. Feb 16, 2011) ................................... 14

*City of Omaha v. CBS Corp,*
    No. 08 Civ. 10816(PKC), 2010 WL 1029290 (S.D.N.Y. Mar. 16, 2010) ............................. 13

*Continental Petroleum Corp., Inc. v. Corporation Funding Partners, LLC,*
    No. 11 Civ. 7801, 2012 WL 1231775 (S.D.N.Y, April 12, 2012) ....................................... 6, 9

*Cortec Indus., Inc. v. Sum Holding L.P.,*
    949 F.2d 42 (2d Cir. 1991) ................................................................................................... 6

*Day Spring Enterprises, Inc. v. LMC Int'l, Inc.,*
    No. 98-CV-0658A (F), 2004 WL 2191568 (W.D.N.Y. 2004) ................................................ 18

*DiVittorio v. Equidyne Extractive Indus., In.,*
    822 F.2d 1242 (2d Cir. 1987) ............................................................................................... 6

*Dore v. Wormley,*
   690 F. Supp. 2d 176 (S.D.N.Y. 2010)........................................................................ 25

*Ergowerx Int'l, LLC v. Maxell Corp. of America,*
   18 F.Supp.3d 430 (S.D.N.Y. 2014)................................................ 6, 7, 8, 9, 12

*Harris v. Mills,*
   572 F.3d 66 (2d Cir.2009)............................................................................................ 5

*Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.,*
   665 F.Supp.2d 239 (S.D.N.Y 2009)........................................................... 9, 11, 12

*Howell v. Am. Airlines, Inc.,*
   2006 WL 3681144 (E.D.N.Y. 2006).......................................................................... 19

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,*
   62 F.3d 69 (2d Cir. 1995)........................................................................................ 6, 7

*Int'l Finance Corp. v. Carrera Holdings, Inc, et al.,*
   82 A.D.3d 641 (N.Y. App. Div. 2011) .................................................................. 13

*James v. Countrywide Fin. Corp.,*
   849 F. Supp. 2d 296 (E.D.N.Y. 2012) .................................................................... 19

*JBC Holdings NY, LLC v. Pakter,*
   931 F.Supp.2d 514 (S.D.N.Y. 2013)........................................................ 6, 12, 15, 16

*JM Sunrise Auto., LLC v. Volkswagen Group of America, Inc.,*
   997 N.Y.S.2d 270 (N.Y. Sup. Ct. Nov. 6, 2014) .................................................. 14

*Johnson v. Nextel Commc' ns, Inc.,*
   660 F.3d 131 (2d Cir. 2011)................................................................................ 18, 23

*L-7 Designs, Inc. v. Old Navy, LLC,*
   647 F.3d 419 (2d Cir. 2011).................................................................................... 5

*Lanzi v. Brooks,*
   54 A.D.2d 1057, 388 N.Y.S.2d 946 (N.Y. App. Div. 1976) ................................ 17

*Lerner v. Fleet Bank, N.A.,*
   459 F.3d 273 (2d Cir. 2006)...................................................................................... 6

*Lo Bosco v. Kure Eng'g Ltd.,*
   891 F.Supp. 1020 (D.N.J. 1995) .............................................................................. 7

*McKernin v. Fanny Farmer Candy Shops, Inc.,*
   176 A.D.2d 233, 574 N.Y.S.2d 58 (N.Y.S.2d 1991) ............................................ 9

*Naporano Iron & Metal Co. v. American Crane Corp.,*
  79 F.Supp.2d 494 (D.N.J. 1999) ............................................................................ 7

*Netto v. Rastegar,*
  No. 21 Civ. 4580(CM), 2012 WL 4336167 (S.D.N.Y. Sept. 20, 2012) ............................. 7, 17

*Orlander v. Staples, Inc.,*
  No. 13 CIV. 703 NRB, 2014 WL 2933152 (S.D.N.Y. 2014)................................................. 23

*Raymond Weil, S.A. v. Theron,*
  585 F.Supp.2d 473 (S.D.N.Y 2008)............................................................................. 22

*Shively v. Mitchell,*
  No. 13 Civ. 2164, 2013 WL 5761498 (October 24, 2013 ..................................................... 7

*Sirius Star v. Sturgeon Bay Shipbuilding & Dry Dock Co.,*
  196 F. 2d 479 (7th Cir. 1952) .................................................................................... 20

*Spanierman Gallery PSP v. Love,*
  2003 WL 22480055 (S.D.N.Y. Oct.31, 2003) ...................................................................... 25

*State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC,*
  646 F.Supp.2d 668 (D.N.J. 2009) .................................................................................. 9

*Usov v. Lazar,*
  No. 13 CIV. 818 RWS, 2013 WL 3199652 (S.D.N.Y. 2013) ................................................ 25

*Voices v. Providersoft, LLC,*
  832 F.Supp.2d 194 (E.D.N.Y. 2010) ............................................................................. 13

*Wolff v. Rare Medium, Inc.,*
  210 F. Supp. 2d 490 (S.D.N.Y. 2002), *aff'd*, 65 F. App'x 736 (2d Cir. 2003) ...................... 21

*Wright v. Bank of Metropolis,*
  18 N.E. 79 (N.Y. 1888)............................................................................................... 23

**STATUTES**

Cal. Com. Code §2-309(1)......................................................................................... ii, 23

**OTHER AUTHORITIES**

Archived News,
  *DQSEthiopia.com*http://www.*DQSEthiopia.com*/00/Archived%20News.html  (last
  visited Jan. 28, 2015) ................................................................................................. 2

Sarah Carta, *Highlights from the Field: ACEF supports African renewable energy
  projects for enduring development, OPIC.gov*, http://www.opic.gov/blog/opic-in-

action/highlights-from-the-field-acef-supports-african-renewable-energy-projects-for-enduring-dev ......................................................................................................... 2

*U.S. Patent Application No.* (filed Jul. 18, 2007) ................................................................ 2

*U.S. Patent Application No.* (filed Jul. 30, 2007) ................................................................ 2

*U.S. Patent Application No.* (filed Jun. 16, 2010) ............................................................... 2

*U.S. Patent Application No.* (filed May 29, 2002)............................................................... 2

*U.S. Patent Application No.* (filed Sep. 26, 2001) .............................................................. 2

U.S. Patent No. 5,250,867(filed Nov. 20, 1991)................................................................... 2

U.S. Patent No. 5,815,058(filed Apr 2, 1997) ...................................................................... 2

U.S. Patent No. 7,701,095(filed Jul. 30, 2007)..................................................................... 2

U.S. Patent No. 7,750,522(filed Jul. 18, 2007)..................................................................... 2

U.S. Patent No. 7,966,716(filed Jun. 16, 2010) ................................................................... 2

## RULES

Fed. R. Civ. P. 9(b)(2) and 9(b)(3)...................................................................................... 11

Fed. R. Civ. P. 10(c) .............................................................................................................. 6

**INTRODUCTION**

Intelligen Power Systems, LLC's ("Intelligen's") Complaint is legally and factually deficient on all counts and should be dismissed in its entirety.  Its primary claim - fraudulent inducement - is based on a collection of eleven representations, all of which merge with the contract, many of which lack 9(b) specificity or are statements of future expectations, and none of which are supported by facts demonstrating falsity, or a strong inference of intent to defraud. New York law and 9(b) require far more to sustain a companion fraud claim.  Overshadowing these deficiencies, the fraud claim makes no plausible sense:  it posits nine months of negotiations by dVentus Technologies, LLC ("dVentus") including a negotiated 5-year exclusive supply agreement, plus another ten months spent by dVentus on status communications, specifications and delivery issues, all while it supposedly never intended to perform.  And dVentus's supposed scheme netted it only $78,000 and litigation.  Even without the legal bar of this type of fraud claim, it would not survive dismissal under *Twombley*.

Similarly, Intelligen fails to adequately allege a breach of contract, and does not specify the actual terms breached.  The contract documents themselves (which were not attached to the Complaint but are herewith) contradict the key allegations.  In particular, the principal allegation that a delivery date when asked in March 2014, dVentus could not provide, omits that dVentus notified Intelligen that May 31, 2014 was the new delivery date.  Intelligen's alternate allegation that dVentus agreed to "deliver" in 16 weeks is likewise unsupported by an actual agreement, and is contradicted by the documents Intelligen relies on.

Lastly, the replevin claim is equally meritless, since it cannot survive as a claim where the contract that already encompasses the property at issue.  In short, none of Intelligen's claims are adequately stated to survive dismissal under 12(b)(6)

## BACKGROUND

**A.    THE PARTIES**
**1.        dVentus and CEO Daniel Gizaw**

dVentus specializes in designing and manufacturing highly specialized generators and electronics for clean energy technology.  (Compl. ¶1.)  It is recognized by the United States Agency for International Development ("USAID")[1] as a partner, and the US Overseas Private Investment Corporation ("OPIC") staff visited dVentus's facilities and reported that it had an "impressive office and laboratory . . . focus[ing] on state-of-the-art technology."[2]  dVentus's facilities are certified as meeting the stringent ISO9001:2008 standard "for the scope of Design, Development, Manufacture & Marketing of Electromechanical Machinery and Equipment" by the international arm of Underwriter's Laboratories.[3]  dVentus's CEO, Daniel Gizaw, is a named inventor on ten US Patents and applications for generators, electrical and mechanical applications.[4]

---

[1] US AID said dVentus "exemplifies…how small, innovative firms are changing the landscape of the power sector in Sub Saharan Africa."  *Private Sector*, USAID.gov (Jan. 22, 2015), http://www.usaid.gov/powerafrica/partners/private-sector#dv.

[2] Sarah Carta, *Highlights from the Field: ACEF supports African renewable energy projects for enduring development*, OPIC.gov (Aug. 12, 2014), http://www.opic.gov/blog/opic-in-action/highlights-from-the-field-acef-supports-african-renewable-energy-projects-for-enduring-development.

[3] The 2012 certification is reported both at *Archived News*, *DQSEthiopia.com*, http://www.*DQSEthiopia.com*/00/Archived%20News.html (last visited Jan. 28, 2015)  and is available from US DQS Underwriter's Laboratory website at:  *dVentus Wind Technologies PLC*, MyDQS.com, https://www.mydqs.com/en/customers/customer-database.html?aoemydqs%5Bcompany_no%5D=479699&aoemydqs%5Baction%5D=singleView&cHash=09ed3d1c83094ccebad8d40a56d8457a (last visited Jan. 28, 2015).

[4] U.S. Patent No. 7,966,716 (filed Jun. 16, 2010);  U.S. Patent No. 7,750,522 (filed Jul. 18, 2007); U.S. Patent No. 7,701,095 (filed Jul. 30, 2007);  U.S. Patent No. 5,815,058 (filed Apr 2, 1997);  U.S. Patent No. 5,250,867 (filed Nov. 20, 1991);  *U.S. Patent Application No.* 2010025139 (filed Jun. 16, 2010);  *U.S. Patent Application No.* 20080036215 (filed Jul. 18, 2007);  *U.S. Patent Application No.* 20080030085 (filed Jul. 30, 2007);  *U.S. Patent Application No.* 20030057800 (filed Sep. 26, 2001); *U.S. Patent Application No.* 20030227230 (filed May 29, 2002), available at USPTO.gov.

### 2. Intelligen and CEO David Lesser

Intelligen alleges that it "is a manufacturer of pre-packaged cogeneration equipment for onsite production of combined heat and power ("CHP") on an environmentally friendly basis." (Compl. ¶17.)  David Lesser is the President and Managing Partner of Intelligen, and he communicated with and negotiated contract terms with dVentus.  (Compl. ¶18.)

## B.  THE CONTRACT AND NEGOTIATIONS

Beginning in June 2012, dVentus and Intelligen engaged in a series of negotiations for dVentus to design and build a custom-built prototype of cogeneration equipment – a generator and inverter for residential and commercial buildings.  Among other terms, dVentus estimated 20 weeks for delivery "if everything looks good."  (Compl. ¶36.)  After six months of negotiations, on March 22, 2013, dVentus submitted a Price Quotation with applicable Terms and Conditions which unequivocally state, "Delivery schedules are estimated only," and that estimates assuming work "without interruptions caused or requested by the Purchaser."  (Ex. 1. §1)[5](Compl. ¶85.)  The Price Quotation likewise set the terms for cancellation of any order, requiring payment for all work completed, reduced by any salvage value.  (Ex. 1§9.)  On April 24, 2013 Intelligen submitted a Purchase Order for the quoted generators and converters.  (Ex. 2.)(Compl. ¶48.)

On May 7, 2013 dVentus sent Intelligen an Invoice for a $78,551.00 deposit.  (Ex. 3.) (Compl. ¶49.)  The parties signed a "Supply Agreement" on May 8, 2013.  (Ex. 4.)(Compl. ¶1.) The Supply Agreement set terms for selling Intelligen generator and inverter packages, including a protocol for notice of breach, right to cure and termination of the agreement (Ex. 1 §§15-16.), and limits available damages: "In no event, shall either party be liable to the other for any indirect, incidental, or consequential damages."  (Ex. 1 §12.)

---

[5] Citations to "Ex. 1-6" are to exhibits attached to the Declaration of Frederick R. Juckniess.

Intelligen alleges that in October 2013, it "continued to seek updates" on the "status of the design, ordering of components and fabrication of the Equipment." (Compl. ¶65.) Intelligen does not allege any notice concerning a delivery date or breach in 2013, though Intelligen alleges several dVentus communications including that, in December of 2013, Gizaw informed it that delivery would be in February 2014. (Compl. ¶72.)

## C.   THE ALLEGED BREACH, FAILURE TO CURE, AND TERMINATION

The relationship began to suffer when, in February 2014, Intelligen's CEO David Lesser telephoned one of dVentus' investors to complain, and dVentus sent him a cease and desist notice. (Ex. 6).[6]  Intelligen's counsel, Danielle Lesser, responded on behalf of Intelligen and David Lesser, resulting in dVentus' counsel correspondence of March 18, 2014, which detailed contract and development issues, reminded Intelligen of the changes in specification that resulted in additional time,[7] and specifically stated a delivery date: "dVentus estimates that the product will be ready for shipping to the United States on or before May 31, 2014." (Ex. 5.)

On March 21, 2014, Ms. Lesser, emailed a letter back stating that the new delivery date was "unacceptable" and that communications with dVentus "make very clear that your client has

---

[6] The Complaint incorporates the May 21, 2014 letter from Danielle Lesser, which included and the March 3, 2014 email and cites March 18 correspondence from dVentus counsel to Intelligen. These documents may properly be considered at the 12(b)(6) stage as detailed below.

[7] Among other detail, the email stated: "The specification changes resulted in an additional 16 weeks of development and engineering time involving the efforts of six engineers, 2 techs and 1 program manager. This additional work then must be translated into new parts, some of which are obtained from overseas suppliers. As a result, these changes and revisions increased the price of the product ordered and triggered the obligation of the parties to work, in good faith, to agree on new prices. The cost of the additional development work alone is more than $460,000. Although dVentus has allowed this to be postponed and has proceeded cooperatively focusing on delivery we should ensure that Intelligen through Mr. Cona is prepared to discuss this issue with dVentus and how it will be handled both presently and in the future." (Ex. 6)

4

anticipatorily repudiated the parties' agreement."  (Ex. 5).  The Complaint relies on this letter as Intelligen's "notice" of material breach.  (Compl. ¶¶74-76).

Intelligen initiated its action in New York and limited its claims to return of the deposit. (Dkt. __).[8]  In its Complaint filed here, it has substantially changed and expanded its claims.

## STANDARD OF REVIEW

To survive dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Second Circuit has held that plausibility depends on "the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's interferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011), *citing Iqbal*, 556 U.S. at 672-84.  "[A] court must accept as true all allegations contained in a complaint," but threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678; *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (internal citations omitted).

Under Rule 9(b), plaintiffs must meet a heightened pleading standard to allege fraud and must state with particularity the circumstances constituting fraud. To enumerate the requirements "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the

---

[8] Plaintiff put defendant on notice of its material breach by written letter dated March 21, 2014. Defendant failed to cure within 15 days. As a result of the foregoing, plaintiff has been damaged in the amount of $78,551.00. Plaintiff also seeks replevin of parts and equipment which plaintiff provided to defendant but which defendant has failed to return. . . Plaintiff seeks damages in the amount of $78,551.00, plus pre-judgment interest and punitive damages and replevin of plaintiff's parts and equipment.

statements were fraudulent." *Continental Petroleum Corp., Inc. v. Corporation Funding Partners, LLC*, No. 11 Civ. 7801, 2012 WL 1231775 at *3 (S.D.N.Y., April  12, 2012)  (*quoting Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292-93 (2d Cir. 2006).[9]

To meet Rule 9(b)'s requirements, "a complaint must 'allege facts that give rise to a strong inference of fraudulent intent.'" *Continental Petroleum Corp., Inc. v. Corporation Funding Partners, LLC*, No. 11 Civ. 7801, 2012 WL 1231775 at *3 (S.D.N.Y., April  12, 2012)(internal citations omitted); *Berman v. Morgan Keegan & Co.,* 455 Fed.Appx 92, 95 (2d Cir. 2012) a*ccord, Ergowerx Int'l, LLC v. Maxell Corp. of America*, 18 F.Supp.3d 430, 445 (S.D.N.Y. 2014).  Furthermore, although intent may be alleged generally, the Second Circuit has warned that "we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculative and conclusory allegations. *JBC Holdings NY, LLC v. Pakter*, 931 F.Supp.2d 514, 531-32 (S.D.N.Y 2013).  Accordingly, complaint must contain well-pled factual allegations that "give rise to a strong inference of fraudulent intent." *Id.* (citation omitted); *Berman*, 455 Fed.Appx. at 95.  Conclusory pleading on these requirements is inadequate, and warrants dismissal.  *Ergowerx* , 18 F.Supp.3d at 446.

Finally, the court may consider additional documents not attached to the complaint: "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)(*quoting Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *see also* Fed. R. Civ. P. 10(c).  Even if not incorporated by reference, the court may nevertheless consider a document where the complaint "relies heavily

---

[9] The purposes of 9(b) include preventing plaintiffs from misusing a claim of fraud to initiate a strike suit, and protect defendants from unwarranted claims that harm their reputation and goodwill.  *DiVittorio v. Equidyne Extractive Indus., In.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

upon its terms and effect," which renders it integral to the complaint.  *Int'l Audiotext*, 62 F.3d at 72; *see also ATSI Commc'ns v. Shaar Fund Ltd*, 493 F.3d 87, 98 (2d Cir. 2007).

## I.  INTELLIGEN'S FRADULENT INDUCEMENT CLAIM IS LEGALLY AND FACTUALLY DEFICIENT AND SHOULD BE DISMISSED.

Intelligen's Complaint asserts precisely the type of fraudulent inducement claim barred by law and Rule 9(b).  It attempts to expand a simple commercial order and cancellation into a complex and highly implausible fraud claim.  This is improper where a contracting party is disappointed by alleged non-performance and seeks advantage or revenge in litigation.  Rule 9(b)'s heightened pleading requirement "gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements."  *Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F.Supp.2d 494, 511 (D.N.J. 1999).

To make out a viable claim for fraudulent inducement, "a plaintiff must assert the misrepresentation of a material fact, which was known by the defendant to be false and intended to be relied on when made, and that there was justifiable reliance and resulting injury."  *Shively v. Mitchell*, No. 13 Civ. 2164, 2013 WL 5761498 (October 24, 2013, S.D.N.Y) (*quoting Braddock v. Braddock*, 60 A.D.3d 84, 871 N.Y.S.2d 68, 70 (1st Dep't 2009).

To sufficiently allege that a representation was knowingly false, a party must include well-pled facts that could support the plausible inference that the speaker did not believe his or her statements to be true at the time he or she made them.  Failure to do so warrants dismissal. *Id.*  Furthermore, non-performance will not satisfy plaintiff's burden to allege that the promise was fraudulent as made.  *Netto v. Rastegar*, No. 21 Civ. 4580(CM), 2012 WL 4336167, at *6 (S.D.N.Y. Sept. 20, 2012); See *also Ergowerx*, 18 F.3d at 445-446 (*quoting Lo Bosco v. Kure Eng'g Ltd.*, 891 F.Supp. 1020, 1031 (D.N.J. 1995).  Simply repeating that the statements were

false, and known to be so, without concrete facts, warrants dismissal.  *Ergowerx*, at 446. For all

the representations, Intelligen only alleges the blanket conclusion that all were false.  (Compl.

¶¶90-91).

**A.**     **The Representation that Daniel Gizaw Has Electrical Engineering Capability**

Beginning with the specific alleged representations – and the one that most effectively

demonstrates the legal and factual bankruptcy of Intelligen's claim for fraudulent inducement –

Intelligen alleges that Daniel Gizaw represented that he "personally had electrical engineering

capability."  (Compl. ¶89).  Again, Intelligen only offers the conclusion that this was false.

(Compl. ¶90).  This does not satisfy the legal or procedural requirements for pleading fraud.

Moreover, the "engineering capability" representation is so general as to be facially

insufficient to be material, or to induce justifiable reliance, entirely leaving the kind of

"capability" to the imagination.  Nevertheless, this representation fails in the first instance

because it is demonstrably true, based on materials of which the Court may take judicial notice:

Daniel Gizaw is a named inventor on five United States Patents as well as six patent applications

on file with the USPTO involving generators, motors, electrical systems and related

technologies.  *See supra*, n. 4.

Intelligen does not allege *any* facts to claim that Daniel Gizaw knew this (demonstrably

true) statement to be false, nor any facts raising a strong inference of fraudulent intent.  The rest

of Intelligen's alleged representations fare just as poorly upon examination.

**B.**     **All Eleven Representations Relate to Performance Under the
Contract and Cannot Support Fraudulent Inducement.**

As a matter of law, fraudulent inducement cannot be based on an intentionally false

representation concerning whether a party intended to perform a contract or abide by its terms.

*Laquila Grp., Inc. v. Hunt Const. Grp, Inc.*, 44 Misc.3d 1203(A), 2014 WL 2919334 (N.Y. Sup.

Ct. June 25, 2014); *Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.*, 665 F.Supp.2d 239, 254 (S.D.N.Y 2009)(dismissal of fraudulent inducement where allegations were "indistinguishable from a claim alleging that a defendant committed fraud by entering into a contract with no intention of performing.").  Similarly, a plaintiff who is also claiming breach of contract may not, as a matter of law, plead a fraudulent inducement claim unless the representations are concerning material facts that are "collateral or extraneous to the terms of the parties' agreement."  *Continental Petroleum Corp., Inc. v. Corporation Funding Partners, LLC*, No. 11 Civ. 7801, 2012 WL 1231775, at *10 (S.D.N.Y, April 12, 2012) (*quoting McKernin v. Fanny Farmer Candy Shops, Inc.*, 176 A.D.2d 233, 234, 574 N.Y.S.2d 58, 59 (N.Y.S.2d 1991)).  To state such a claim, a plaintiff must "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract;  or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages."  *Id.*  Intentionally false statements concerning intent to perform cannot support a claim of fraud under New York law.  *Continental Petroleum*, 2012 WL 1231775 at *10, *citing Bridgestone/Firestone*, 98 F.3d 13, 20 (2d Cir. 1996);  *see also*, *Ergowerx Int'l, LLC v. Maxell Corp. of* America, 18 F.Supp.3d 430,  (S.D.N.Y. 2014), *quoting State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F.Supp.2d 668, 676 (D.N.J. 2009)(misrepresentations must be "unrelated to the performance of the contract" or be dismissed).  Stated another way, a party cannot "dress[] up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder" and avoid dismissal.  *Continental Petroleum*, 2012 WL 1231775 at *10.  Each of the eleven representations alleged by Intelligen concerns performance under the contract and, accordingly, cannot form the basis of a fraudulent inducement claim.

9

**Complaint ¶89f:**  While Intelligen's breach of contract and termination is based on the "16 wks est" reference on the Invoice, it nevertheless adds a claim that it was fraudulently induced by the representation that dVentus "would fabricate the Equipment for the initial order within 16 weeks, with four weeks of testing in Ann Arbor."  (Compl. ¶89f.)  Though Intelligen chose not to attach the contract or invoice, it still alleges this as a contract term.  (Compl. ¶98.)

**Complaint ¶89g:**  Intelligen alleges that dVentus represented it "would absorb engineering costs, other than as set forth in the Purchase Order."  (Compl. ¶89g.)  It does not allege what is false about this future-looking statement, and the Supply Agreement terms, as well as the Purchase Order and Invoice encompass prices, including a provision that specifically states that changes in specifications will result in different prices to be negotiated.  (Ex. 4 §6.5.)

**Complaint ¶89h:**  Intelligen alleges the representation that "dVentus would have weekly status calls relating to its progress on fabricating the Equipment."  (Compl. ¶ 89g.)  However, the parties included detailed terms in the Supply Agreement that governed communication between the parties, including quarterly "Forecast Review Process," (Ex. 4 §§2.2.2 & 2.1.2), for advising regarding Long Lead Components (Ex. 4 §3), providing notice on component changes (Ex. 4 §3.1), on delivery schedules (Ex. 4 §§8.1-8.4), on access to production plants (Ex. 4 §10.3), warranty issues (Ex. 4 §§12.2-12.3.2), on breach, termination and notice thereof (Ex. 4 §13.3), and on the notice protocol (Ex. 4 §15).  In short, the form and types of communications required were included in the Supply Agreement.

**Complaint ¶89j:**  Intelligen alleges that dVentus represented "the Equipment could be configured for use with 208 Volt or 480 Volt."  (Compl. ¶89j.)  But the parties then specifically contracted for design and production of specific equipment, and there is no allegation of how this expectation of future configuration was false.

**89a, b, c, d, e, i & k:**  Each of these alleged representation involve statements of capability or resources.  For example, Intelligen alleges that dVentus represented it "possessed the financial resources to complete the design and manufacture of the Equipment" (Compl. ¶89k) and "had sufficient manpower and engineering expertise" to produce the equipment.  (Compl. ¶89c.)  Similar allegations about production capabilities warranted dismissal in *Ho Myung*, 665 F.Supp.2d at 254.  There, the defendant allegedly claimed it "had production capacity that it did not, in fact possess," which was indistinguishable from alleging that the defendant entered into the contract with no intention to perform and, thus required dismissal.  *Id.*

Moreover, Intelligen itself alleges that dVentus's capabilities became a contractual requirement (Compl. ¶53), and Intelligen even separately alleges that this contract provision was eventually breached.  (Compl. ¶100).  Accordingly, none of these six representations regarding dVentus's ability to produce are outside the scope of the contract or could support a fraudulent inducement claim.

## C.    Four of the Eleven Representations Fail to Meet the 9(b) Basics

A statement does not meet the requirements of Fed. R. Civ. P. 9(b)(2) and 9(b)(3) when it fails to identify the speaker, the person to whom the statement was made, or where and when the statement was made.  Intelligen's Complaint paragraph 89b does not identify to whom the statement was made as required by 9(b).  (See Compl. ¶41b.)  Complaint paragraph 89c corresponds to Complaint paragraph 29, which fails to identify the speaker.[10]

---

[10] *See also* paragraph 29, which states only that:  "dVentus represented that it had the manpower and engineering capability to adapt its existing inverter product to the CHP industry, the customer's needs, as well as NYSERDA and Con Ed requirements."

Complaint paragraphs 89g[11] and j[12] each fail to correspond to any allegation indicating the who, where, or when the statements were made.

### D.      Five of the Eleven Representations Are Non-Actionable Statements of Future Conduct or Expectation.

Intelligen's claims fail for the additional reason that statements of future conduct or opinions as to future events are not actionable as fraud in the inducement.  *JBC Holdings NY, LLC v. Pakter*, 931 F.Supp.2d 514, 531-32 (S.D.N.Y. 2013).  Statements about what will happen in the future "cannot serve as a basis for a fraud claim just because they subsequently turned out not to be true."  *Ergowerx* 18 F.Supp.3d at 445; *Ho Myung*, 665 F.Sup.2d at 254.

Five of the representations alleged by Intelligen are such statements of future conduct. (Compl. ¶89 f, g, h, i &j).  In its Complaint, Intelligen alleges the following representations:

> f.      "dVentus would fabricate . . . within 16 weeks. . ."
> g.      "dVentus would absorb engineering costs . . ."
> h.      "dVentus would have weekly status calls . . . "
> i.      "dVentus engineers would make a trip to Intelligen's facility in New York . . ."
> j.      "the Equipment could be configured . . ."

(Compl. ¶89).  Each of these representations involves future events or expectations and thus cannot support the fraudulent inducement claim here without specific factual representations supporting the intentional falsity of the statements at the time made.  No facts demonstrate that dVentus did not believe these statements when made.

---

[11] 89g corresponds to paragraph 27 where Intelligen lists a series of representations including "that it would absorb engineering costs," without identifying speaker, listener, time or place.

[12] 89j corresponds with paragraph 30 which states: "dVentus represented that the Equipment could be configured for use in either 208 Volt or 480 Volt configuration.  Most of Intelligen's systems require a 480 Volt configuration.  The first order, however, required a 208 Volt configuration.  Gizaw assured Intelligen that its Equipment could be readily modified for either a 480 or a 208 Volt application."

Furthermore, the allegation that "dVentus would absorb engineering costs" is contradicted by the actual document cited by Intelligen.[13]

## E.    The Statements of Opinion Alleged by Intelligen are Not Actionable in Fraud.

Similar to future predictions, statements of opinion and sales promotion, sometimes referred to as "puffing" cannot support a claim of fraudulent inducement.  *Shema Kolainu-Hear our Voices v. Providersoft,* LLC, 832 F.Supp.2d 194, (E.D.N.Y. 2010); *Int'l Finance Corp. v. Carrera Holdings, Inc, et al*., 82 A.D.3d 641, 642 (N.Y. App. Div. 2011).  For example, statements that a product is "state of the art" or "foolproof" have been held to be non-actionable statements of opinion.  So it is with the allegation that "dVentus possessed the latest technology in efficient generators and inverter systems."  (Compl. at ¶89b.)  This alleged representation cannot support a claim of fraudulent inducement.

## F.    Intelligen Fails to Allege Facts Explaining the Falsity of Any Representation.

The fraud claims fail on the separate ground that Intelligen fails to allege how any representation was false when made (setting aside legally inadequate allegations of non-performance).  To survive dismissal, "plaintiffs cannot rest on their say-so in asserting that statements are fraudulent; they must explain why."  *City of Omaha v. CBS Corp*, No. 08 Civ. 10816(PKC), 2010 WL 1029290, at *10 (S.D.N.Y. Mar. 16, 2010) (quotation omitted, collecting

---

[13] The April 21, 2013 email by Daniel Gizaw describes a breakdown of costs totaling $217,575, and says that in the breakdown "we are not charging you the whole amount required for engineering and the tooling and testing is 0 cost to IntelligenPower."  (Dkt. 14-1 at 7-8.)  Even if the Intelligen had alleged how the breakdown was false (e.g. that it actually included the "whole amount" for engineering), Intelligen did not pay $217,575, or even agree to pay that amount in its Purchase Order.  There is nothing in the email about future changes or additional engineering costs.

cases); Carvel *v. Ross*, No. 09 Civ. 0722(LAK), 2011 WL 856283, at *22 (S.D.N.Y. Feb 16, 2011) (plaintiff "has not explained why [the] statement [at issue] was fraudulent.").

Yet, after listing the eleven representations, Intelligen lumps them all together and concludes generally: "These representations were false when made. (Compl. ¶¶90-91.) Intelligen's say-so is not enough to support fraudulent inducement with respect to *any* of the representations, each of which should be dismissed.

Arguably, there is one allegation that goes farther, where Intelligen alleges: "[u]pon information and belief, dVentus does not have a factory in Ann Arbor, MI." (Compl. ¶70.) Although this might have been sufficient to support an unambiguous allegation, it remains inadequate because it is too imprecise. *JM Sunrise Auto., LLC v. Volkswagen Group of America, Inc.*, 997 N.Y.S.2d 270, 291 (N.Y. Sup. Ct. Nov. 6, 2014) (dismissal of fraudulent inducement claim where "misrepresentation lacks the requisite specificity to be actionable.") Intelligen does not allege whether it believed that dVentus *owned* a "factory" or "facility" in Ann Arbor, or *leased* facilities, or that it "had" a facility in Ann Arbor, which it utilized or hired for testing and assembly, even if owned or operated by other entities. Indeed, Intelligen's Complaint is not even sufficiently precise as to allege that that dVentus did not "have" a facility at the time the representation was allegedly made, only that it does not "have" one now, in January 2015. It even fails to allege whether the "factory" and "facility" (as alleged in different paragraphs) are materially different things.

Moreover, the contract itself renders the idea that dVentus would misrepresent anything about its facilities implausible, as well as renders any reliance on this "fact" unreasonable. The Supply Agreement specifically granted Intelligen access to the facilities contracted by dVentus, including contracted facilities: "If desired by BUYER, SELLER shall also make every reasonable effort to cause its contractors to likewise grant BUYER or

14

representatives of BUYER access to its production plants and permit review of production activity." (Ex. 4 at §10.3.) There is no way to square these facts with a claim that dVentus knowingly and intentionally misrepresented that did not "have" a facility to perform testing and assembly in Ann Arbor, through contractors or otherwise.

## G.   None of the Eleven Allegations Are Supported by Facts Establishing Intent to Defraud.

A plaintiff claiming fraudulent inducement must allege facts sufficient to support "a strong inference of fraudulent intent" or face dismissal. *Acito v. IMJCERA Grp. Inc.*, 47 F.3d 47, 52 (2d Cir. 1995). The quality of facts necessary to meet this standard must demonstrate "a motive for committing fraud and a clear opportunity for doing so," or "when the motive is not apparent," "identify[] circumstances indicating conscious behavior by the defendant." *Allison v. Round Table Investment Management Co., LP*, No. 10 CV 01144(GBD), 2010 WL4456648 at *3 (S.D.N.Y., Oct. 22, 2010)(dismissal for failure to adequately plead intent to defraud); *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03. Civ. 1537(MBM), 2003 WL 23018888, at *13 ("[Plaintiff] has failed to plead a cause of action for fraudulent inducement because it has not alleged that Citibank knew the statements to be false at the time the statements were made or that Citibank intended to defraud BESI"). After facts are pled that can support a "strong inference" of fraudulent intent, "the court must take into account plausible opposing inferences" and the alleged intent must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *JBC Holdings*, 931 F.Supp.2d at 533.

Intelligen's Complaint does not present any plausible theory of motive for dVentus to make false representations regarding any of the eleven items, let alone providing a "strong inference of fraudulent intent" on the sparse facts. Indeed, there does not appear to be any cogent theory of fraudulent intent – Intelligen's allegations claim that dVentus spent 19 months

15

negotiating and performing under the contract, but simply concludes it did all this knowing it would not perform, apparently in the irrational hope of getting a mere $78,000 deposit, all without being held to account or facing suit.

A similar failure to allege a plausible set of facts warranted dismissal in *JBC Holdings NY, LLC*. where the court explained:

> Plaintiffs argue that [defendants] must have never intended to meet their projected target  revenues, because they failed to produce *any* revenues. . . .They promised millions, and  allegedly  brought  in  zilch.   But  it  does  not  follow  from [defendants'] failure to bring in any revenue that they never intended to earn revenues.  That theory tacitly assumes that   [defendants] audaciously intended to promise millions, deliver nothing, set up a competing enterprise, and get away scot free, without ever being held to account in court or otherwise for their perfidy.  But plaintiffs have failed to allege a plausible motive for  such            an audacious and frankly unrealistic plan.

*JBC Holdings,* 931 F.Supp.2d at 534.  Here, the implausibility is even more compelling.  Even if one could accept the implausible waste of time for little money, dVentus has compelling reasons to avoid such perfidy.  dVentus has often dealt with US government entities, including OPIC and USAID.  *See infra* at p.3.   It sells to others in the US and negotiated terms for Intelligen to distributor under a 5-year supply agreement.  (Ex. 4 at §9.)  No facts exist to create a "strong inference" that this company and its prominent CEO would use their time on a supposed elaborate and time-consuming hoax on one $78,000 transaction.  Even the amount demonstrates a lack of motive, particularly when expeditious litigation would cost more than the deposit. While more questions, and more plausible explanations, could be considered in examining Intelligen's non-existent factual support for its fraud theory, the facts pled render the claim implausible.

**H.    Intelligen Fails to Allege Materiality of Any Representation.**

Intelligen provides no factual support to meet the materiality requirement for any representation, which has particular significance here given the imprecision and generality of

the alleged representations.  *Netto,* 2012 WL 4336167, at *5.   For example, Intelligen fails to allege how or why it is material that dVentus allegedly represented that it has "30 design engineers."   And Intelligen own Complaint contradicts the materiality of that claim since it alleges that it understood only "six engineers…would be assigned to Equipment fabrication." (Comp ¶38.)  Nothing else is alleged about needing 30, or any other number, of workers for this order.  (Compl. ¶89e.)  No allegations support or establish the materiality of this (or any other) representation.

**I.      Intelligen Fails To Allege Actual Or Justifiable Reliance.**

As with the rest of its claim, here Intelligen recites only the conclusion of reliance without supporting it with facts.[14]  Failure to allege actual and justifiable reliance also warrants dismissal.  *Lanzi v. Brooks*, 54 A.D.2d 1057, 1058, 388 N.Y.S.2d 946, 948 (N.Y. App. Div. 1976) *aff'd*, 43 N.Y.2d 778, 373 N.E.2d 278 (1977); *Netto,* 2012 WL 4336167, at *7.

**J.      Intelligen's Fraudulent Inducment Claim Should Be Dismissed If Any One Of The Representations Is Determined To Be Legally Or Factually Deficient.**

Last but not least, Intelligen alleges that all eleven allegations together, not each one individually, induced it to sign the contract.  The Complaint states: "Had Intelligen known t h a t these r e p r e s e n t a t i o n s were false,  Intelligen would not have entered into the Agreement and would not have paid any money to dVentus." (Comp ¶92.)  As alleged, if any one representation fails as a matter of law, including with respect to intent or justifiable reliance, then the entire claim be dismissed.

---

[14] It alleges without support or detail:  "Intelligen  justifiably  relied  on these affirmative representations  in entering into the Agreement and paying the deposit to dVentus." (Compl. ¶92.)

## II.    PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST THE DEFENDANT FOR BREACH OF CONTRACT (COUNT II)

Intelligen asserts violations of four sections of the Supply Agreement in Count II of its Complaint.  Just as with its fraud claim, its contract claim is fatally deficient.  This Court should dismiss this claim as well.

New York law requires that a complaint for breach of contract allege: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Commc' ns, Inc.,* 660 F.3d 131, 142 (2d Cir. 2011).  Intelligen fails to adequately allege each element.  Most saliently, the parties' contract included a cancellation clause that governs the terms of Intelligen's cancellation.  The contract unambiguously requires payment for all work performed, less salvage value.

### A.    Upon Cancellation of an Order, Intelligen Must Pay for Work Performed Less Salvage Value.

The Price Quotation cited in the Complaint and the Terms and Conditions governing the order are part of the contract between the parties, notwithstanding Intelligen's decision to omit them and failure to plead their terms.  The Price Quotation was sent to the Plaintiff before the Purchase Order was sent to dVentus, (Comp. ¶40) and was the basis for the Purchase Order and Invoice.  (Comp. ¶48.)  Plaintiff does not allege objections or alterations to the Terms and Conditions. *See, e.g., Day Spring Enterprises, Inc. v. LMC Int'l, Inc.,* No. 98-CV-0658A(F), 2004 WL 2191568 (W.D.N.Y. 2004)(holding terms and conditions included in a price quotation are enforceable when received by the buyer before buyer issued a purchase order that raised no objections to the terms).

Accordingly, Intelligen's termination of the order is governed by this unambiguous contract term:

> Cancellation Clause:  This order may be cancelled by the Purchaser in whole or in part with fifteen (15) days prior written notice to dVentus.  Upon any such cancellation, liability of purchaser shall be limited to payment for the portion of contract completed to the date of receipt by dVentus of notice of cancellation . . . provided, however, that if in said written notice of cancellation the Purchaser elects not to take delivery of the complete portion of said contract, the liability of the Purchaser shall be reduced by the salvage value of all work in progress.

(Ex. 1 at §9.)  Intelligen's breach claim is barred by the Cancellation clause.

**B      Intelligen's Fails to Adequately Allege a Breach of Contract Concerning a 16-Week Delivery Date.**

Even if not already barred by the Cancellation Clause, Intelligen fails to adequately allege an agreed-upon 16-week delivery date.  "In order to adequately allege the existence of an agreement, a plaintiff must plead the provisions of the contract upon which the claim is based." *James v. Countrywide Fin. Corp.,* 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012), *citing Howell v. Am. Airlines, Inc.,* 2006 WL 3681144 (E.D.N.Y. 2006) (internal quotation marks omitted).  This does not require verbatim contract recital, but it does require the inclusion of "the terms of the agreement upon which liability is predicated by express reference." *Id.*  Failure to make express reference is grounds for dismissal under Fed. Rul. 12(b)(6).  *See James v. Countrywide Fin. Corp.,* 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012) (Partial dismissal of a complaint for failure to specify the terms of the agreement "upon which liability is predicated").

Intelligen alleges, "In violation of Section 2.2 of the Agreement and the Invoice, dVentus failed to deliver the Equipment requested by Intelligen in the Purchase Order within the contractually- required 16 weeks under the Invoice."  (Compl. ¶98.)  But the Invoice contradicts the allegation.  The Invoice's "Ship Date" section reads, "16 Wks est."  (Ex. 3.)  Neither the Invoice nor the Supply Agreement establishes a fixed 16-week delivery term.  (Compl. ¶98.)

That this was only an estimate in the Invoice—and not a contractual term or firm delivery date—is confirmed by other items in Intelligen's Complaint, which acknowledge:

"By email dated January 27, 2013, Gizaw confirmed that the delivery would take 20 weeks **'if everything looks good.'**"  (Compl. ¶36, emphasis added.)

"On March 18, 2013, Gizaw sent an email to Cona providing a pricing **estimated lead-time of 16 weeks**, plus 4 weeks for testing, plus the time to ship components from Ethiopia to Ann Arbor."  (Compl. ¶40, emphasis added.)

During an April 13, 2013 meeting, "Gizaw stated that lead times for the first set of units was **approximately** sixteen weeks and that future deliveries would be faster."  (Compl. ¶42, emphasis added.)

Moreover, Plaintiff's Purchase Order makes no reference to delivery date at all.  (Exs. 1 & 2.)

In short, Intelligen's vague pleading attempts to rewrite the contract, and has failed to adequately state a claim for breach of a 16-week delivery date.  For the court to impose such an obligation on dVentus would violate the principle of contract construction that "[a] court should not interpret a contract in a manner that would be . . . contrary to the reasonable expectations of the parties." [15]   *Brown v. Lower Brule Cmty. Dev. Enter., L.L.C.,* No. 13-CV-7544 PKC, 2014 WL 5508645, at *4 (S.D.N.Y. 2014).

The Complaint further alleges that this action was commenced after the Plaintiff requested a delivery date in March 2014.  (Compl. ¶75.)  Therefore, as of March 2014 the Plaintiff was still behaving as if the contract between the parties were still in full force, and not as if the contract had been irrevocably breached by failure to deliver in a sixteen-week period.

Moreover, the Invoice was issued under a Price Quotation from dVentus containing Terms and Conditions which provided that any estimates are, *inter alia* "based upon production

---

[15]Where an estimated date is an agreed-upon term, failure to "deliver" by the estimated date is not automatically a breach of contract in any event.  Where an estimated shipping term is actually made part of a contract "the only obligation of the [seller] [is] to exercise its best efforts to complete by that date."  *See, e.g. the Sirius Star v. Sturgeon Bay Shipbuilding & Dry Dock Co.*, 196 F. 2d 479 (7th Cir. 1952).  Here, Intelligen fails to adequately allege the estimate was a contract term, let alone facts demonstrating that dVentus failed to exercise its best efforts.

of the order quantity within the estimated delivery time determined by dVentus Technologies

("dVentus") and without interruptions caused or requested by the Purchaser."  (Ex. 1 §1.)

Intelligen even fails to allege (because it could not) the necessary facts that it did not cause or

request interruptions in connection with specification adjustments.  In fact, Intelligen

corroborates its requested changes by admitting required parts were not sent until September

2013.  (Compl. at ¶52)   How or when the parties agreed on a sixteen-week delivery date is

missing from Intelligen's Complaint.

The Complaint also cites Section 2.2 and 8.4 of the Supply Agreement as the source of

the 16-week delivery date.  (Compl. ¶98.)  Section 2.2 is not relevant, but states, "SELLER

[dVentus] shall be obligated to sell to BUYER [Intelligen] in accordance with the terms of this

agreement Planned Volume, as applicable, subject to the BUYER's not being in material breach

of this Agreement."  (Ex. 4 §2.2.)  There is no allegation of "Planned Volume" or the other

forecast and reporting requirements of 2.2.  In short, no allegations establish how 2.2 was

breached.  Instead, it is another failure of Intelligen to identity "the specific provision that was

breached as a result of the acts at issue."  *Wolff v. Rare Medium, Inc*., 210 F. Supp. 2d 490, 494

(S.D.N.Y. 2002) *aff'd*, 65 F. App'x 736 (2d Cir. 2003).  The same inadequacy exists with

Intelligen's allegation that, "[i]n violation of Section 8.4 of the Agreement, dVentus postponed

delivery of the Equipment for a period greater than 4 weeks."  (Compl. ¶99) (Ex. 4 §8.)  The

allegation does not meet the contract terms or adequately allege a breach.

Intelligen is required to allege the actual contract terms that were breached to state a

claim for breach of contract.  It has failed to do so in its Complaint.

**C.      The Breach of Contract Claim Must be Dismissed Because dVentus Cured
         Any Alleged Breach.**

Intelligen's allegations also present a theory contradicting the 16-week delivery breach. It alleges that, on March 21, 2014, Intelligen emailed a "notice of material breach" and that the breach went uncured.  (Compl. ¶75.)  The actual documents contradict these allegations.

A cured breach of contract is not actionable, because the point of a cure provision "is to allow the parties…to correct their course and maintain the promises in their contract."  *Raymond Weil, S.A. v. Theron*, 585 F.Supp.2d 473, 484 (S.D.N.Y 2008).  In *Raymond Weil*, a breach of contract suit against actress Charlize Theron was dismissed because the breach (an advertisement featuring Theron wearing a watch belonging to a designer other than the plaintiff) was cured within five days, as required by the contract's termination section.  *Id.*

In her March 21, 2014 communication, Intelligen's counsel provides no notice of breach, though it references a collection of statements she claimed amounted to "anticipatory repudiation," including the provision of a May 31, 2014 delivery date – a date Ms. Lesser characterized as "unacceptable."  (Ex. 6)  Intelligen fails to allege that this emailed "notice" met the requirements of "Notice" in the Contract, and it unambiguously does not.[16]  It is not addressed or sent as required, nor does it contain a plain statement of breach.  Furthermore, the allegation cannot be reconciled with Intelligen's own letter and the March 18 email that stated "dVentus estimates that the product will be ready for shipping to the United States on or before May 31, 2014." (Ex. 5.)  As such, the breach alleged is contradicted or, at worst, was cured. (Ex. 4 §13.)  Accordingly, Intelligen's breach of contract claim should be dismissed.

---

[16] The Supply Agreement provides: "All notices under this Agreement shall be deemed to have been effectively given when sent by certified mail, overnight delivery or other courier service, signature required, properly addressed to the other party at the below address of at such address as the party has designated in writing."  (Ex. 4 §15.)

**D.    The Breach of Contract Claim Must be Dismissed Because dVentus Did Not Fail to Deliver Within a Reasonable Time under New York Uniform Commercial Code §2-309(1).**

Intelligen alternatively alleges that dVentus failed to deliver within a "reasonable time" under New York Uniform Commercial Code §2-309(1).  (Compl. ¶98.)  Once again, the Complaint provides no support for this allegation.  N.Y. UCC §2-309(1) provides that delivery time, if not "agreed upon shall be a reasonable time."  Under New York law, "[w]hat is a reasonable time when the facts are undisputed, and different inferences cannot reasonably be drawn from the same facts, is a question of law."  *Wright v. Bank of Metropolis*, 18 N.E. 79, 85 (N.Y. 1888).  The facts, even as alleged by the Complaint, evince that, as a matter of law, dVentus did not fail to deliver within a reasonable time.

When the N.Y. UCC provides for a reasonable amount of time for some action, reasonableness is dependent on three factors: the nature, purpose, and circumstances of the action.  N.Y. UCC §1-204.  The Complaint fails to provide any facts or basis to support its claim that the nature, purpose, or circumstances of the contract between the parties demonstrates that dVentus violated N.Y. UCC §2-309(1) and §1-204.  Once again, the facts and applicable law demonstrate the baselessness of the Complaint's allegations.

**E.    The Breach of Contract Claim Must be Dismissed Because the Complaint Fails to Allege Damages.**

Intelligen fails to seek damages, because all of the damages Intelligen seeks are barred by the Supply Agreement and the Terms and Conditions.  Under New York law, a claim for breach of contract requires a complaint to allege damages.  *Johnson,* 660 F.3d at 142.  A complaint without an allegation of damages must be dismissed at the 12(b)(6) stage.  *See Orlander v. Staples, Inc*., No. 13 CIV. 703 NRB, 2014 WL 2933152 (S.D.N.Y. 2014) (Issuing a 12(b)(6) dismissal for lack of damages where Staples violated a service warranty by failing to refer the

plaintiff to a nearby repair center as contractually obligated, instead referring plaintiff to the manufacturer, under whose warranty plaintiff's computer could have been repaired at no cost).

The Supply Agreement explicitly states, "In no event, shall either party be liable to the other for indirect, incidental, or consequential damages."  (Ex. 4 §14.2.)  Terms and Conditions state that, upon cancellation of the contract Intelligen would be liable for "payment for the portion of contract completed."  (Ex. 1 §9.)  Termination of the contract does not provide Intelligen with the right to any refund nor any other damages.  Limitations on damages are completely enforceable under New York law.  N.Y. UCC §2-719.

Despite these explicit contractual terms, the Complaint seeks nine forms of damages, eight of which are incidental,[17] consequential,[18] or refunds barred by the cancellation clause. (Compl. ¶108a-h.)  The ninth damage sought is "the value of the Parts sent to dVentus but never returned."  (Compl. ¶87.)  These parts were due back to Intelligen upon termination of the Supply Agreement.  (Ex. 4. §13.3.)  However, as noted on p. 25 *supra*, the Supply Agreement has not been properly terminated.

The breach of contract claim must be dismissed for failure to allege damages.

### III.   PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST THE DEFENDANT FOR REPLEVIN (COUNT III)

Intelligen adds a claim for Replevin in Count III which is not adequately pled and merely restates its breach of contract claim and is thus barred.  Under New York law, a claim for

---

[17] Incidental damages are "any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach."  N.Y. U.C.C §2-715(1).

[18] Consequential damages are "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise"  N.Y. U.C.C §2-715(2).

Replevin must establish (1) "that the defendant is in possession of certain property of which the plaintiff claims to have a superior right," (2) that a demand was made for return of the chattel, and (3) that plaintiff refused to return the chattel. *Dore v. Wormley*, 690 F. Supp. 2d 176, 183 (S.D.N.Y. 2010).  Furthermore, where the plaintiff fails to "allege any independent duty by Defendants outside of the purported contracts, Plaintiff fails to adequately state a claim for replevin." *Usov v. Lazar*, No. 13 CIV. 818 RWS, 2013 WL 3199652, at 7 (S.D.N.Y. 2013); *Spanierman Gallery PSP v. Love,* 2003 WL 22480055, at *3 (S.D.N.Y. Oct.31, 2003) (dismissing replevin claim that where it arose from allegations that Defendants did not return object in violation of a contract)."

Intelligen's Complaint neither acknowledges that it is covered by, and limited to, the contract terms nor attempts to allege facts to state a replevin claim.  (Compl. ¶104-07.)  In fact, Intelligen's Complaint appears to acknowledge it is only a restatement of Count II's allegation that dVentus failed to return equipment to Intelligen under Section 13.4 of the Supply Agreement.[19]  (Compl. ¶101.)  Accordingly, Count III of Intelligen's Complaint should be dismissed for failure to state a claim for replevin.

<div style="margin-left:40%">

Respectfully submitted,

SCHIFF HARDIN LLP

</div>

Dated: January 30, 2015

<div style="margin-left:40%">

s/ Frederick R. Juckniess
Frederick R. Juckniess  (*Pro Hac Vice*)
350 S. Main Street, Ste. 210
Ann Arbor, MI  48104
734-222-1504 (Phone)
734-222-1501 (Fax)
rjuckniess@schiffhardin.com

*Attorneys for Defendant dVentus Technologies LLC*

</div>

---

[19] "In violation of Section 13.4 of the Agreement, dVentus failed to return the Parts to Intelligen upon termination of the Agreement."  (Compl. §101.)

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2015 a copy of the foregoing was filed with the Court using the ECF system which will send notification of such filing to all attorneys of record.  I have also caused the foregoing to be served via first-class U.S. Mail to Joaquin Ezcurra and Danielle Lesser, at Morrison Cohen LLP, 909 Third Avenue, New York, NY 10022-4784.

By:  /s/ Frederick R. Juckniess
Frederick R. Juckniess

45685-0000
AA\200116424.1

26