## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**INTELLIGEN POWER SYSTEMS, LLC,**

        **Plaintiff,**

        **-against-**

**dVENTUS TECHNOLOGIES, LLC,**

        **Defendant.**

**CIVIL ACTION NO. 14-cv-07392-PAE**

**HON. JUDGE PAUL A. ENGELMAYER**

---

### dVENTUS'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
### AMENDED COMPLAINT PURSUANT TO FED.R.CIV.P. 12(B)(6) AND 9(B)

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ........................................................................................................1

BACKGROUND ...........................................................................................................2

A.       THE PARTIES ...............................................................................................2

         1.       dVentus and CEO Daniel Gizaw ............................................................2

         2.       Intelligen and CEO David Lesser ..........................................................2

B.       THE CONTRACT AND NEGOTIATIONS .....................................................3

C.       THE ALLEGED BREACH, FAILURE TO CURE, AND TERMINATION .................4

STANDARD OF REVIEW ............................................................................................5

I.       INTELLIGEN'S FRADULENT INDUCEMENT CLAIM IS LEGALLY
         AND FACTUALLY DEFICIENT AND SHOULD BE DISMISSED. ...........................6

A.       All Seven Representations Relate to Performance Under the Contract and
         Cannot Support Fraudulent Inducement. ...........................................................8

B.       Four of the Seven Representations Fail to Meet the 9(b) Basics ...............................10

C.       Intelligen Fails to Allege Facts Explaining the Falsity of Any Representation ..........11
         12

D.       None of the Seven Allegations Are Supported by Facts Establishing Intent to Defraud. .13

E.       Intelligen Fails to Allege the Materiality of Two Representations. ...............................15

II.      PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST THE DEFENDANT
         FOR BREACH OF CONTRACT (COUNT II) .............................................................15

A.       Intelligen's Fails to Adequately Allege a Breach of Contract Concerning a
         16-Week Delivery Date .....................................................................................16

B.       The Breach of Contract Claim Must Be Dismissed Because dVentus Cured
         Any Alleged Breach. ........................................................................................18

i

C.    The Breach of Contract Claim Must be Dismissed Because dVentus Did Not Fail to Deliver Within a Reasonable Time under New York Uniform Commercial Code §2-309(1). ......19

D.    The Breach of Contract Claim Must be Dismissed Because the Complaint Fails to Allege Damages Cognizable by Law ..................................................................20

III.   PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST THE DEFENDANT  FOR REPLEVIN (COUNT III) ..................................................................................24

# INDEX OF AUTHORITIES

## CASES

*Acito v. IMJCERA Grp. Inc.,*
  47 F.3d 47 (2d Cir. 1995) ..................................................................................................... 13

*Allison v. Round Table Investment Management Co., LP,*
  No. 10 CV 01144(GBD), 2010 WL4456648 (S.D.N.Y., Oct. 22, 2010) ................................ 13

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................................... 5

*ATSI Commc'ns v. Shaar Fund Ltd,*
  493 F.3d 87 (2d Cir. 2007) ..................................................................................................... 6

*Austin v. Ford Models, Inc.,*
  149 F.3d 148 (2d Cir. 1998)( ................................................................................................ 23

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.,*
  No. 03. Civ. 1537(MBM), 2003 WL 23018888 (S.D.N.Y. 2003).......................................... 13

*Bell Atl. Corp. v Twombly,*
  550 U.S. 544 (2007) ........................................................................................................... 1, 5

*Berman v. Morgan Keegan & Co.,*
  455 Fed.Appx 92 (2d Cir. 2012) ............................................................................................. 6

*Braddock v. Braddock,*
  60 A.D.3d 84, 871 N.Y.S.2d 68 (1st Dep't 2009) ................................................................... 7

*Bridgestone/Firestone,*
  98 F.3d 13 (2d Cir. 1996) ....................................................................................................... 9

*Brown v. Lower Brule Cmty. Dev. Enter., L.L.C.,*
  No. 13-CV-7544 PKC, 2014 WL 5508645 (S.D.N.Y. 2014).................................................. 17

*Carvel v. Ross,*
  *No. 09 Civ. 0722(LAK), 2011 WL 856283 (S.D.N.Y. Feb 16, 2011)* ....................................... 11

*City of Omaha v. CBS Corp,*
  No. 08 Civ. 10816(PKC), 2010 WL 1029290 (S.D.N.Y. Mar. 16, 2010).............................. 11

*Continental Petroleum Corp., Inc. v. Corporation Funding Partners, LLC,*
  No. 11 Civ. 7801, 2012 WL 1231775 (S.D.N.Y, April 12, 2012)..................................... 5, 8, 9

*Cortec Indus., Inc. v. Sum Holding L.P.,*
  949 F.2d 42 (2d Cir. 1991)....................................................................................................... 6

*Credit Suisse First Boston v. Utrecht Am. Fin. Co.*, 30 Misc. 3d 879, 882, 914 N.Y.S.2d
   600, 603 (Sup. Ct. 2010) *aff'd sub nom. Credit Suisse First Boston v. Utrecht-Am. Fin.
   Co.*, 84 A.D.3d 579, 923 N.Y.S.2d 482 (2011). ...................................................................... 22

*Day Spring Enterprises, Inc. v. LMC Int'l, Inc.*,
   No. 98-CV-0658A (F), , 2004 WL 2191568 (W.D.N.Y. 2004) ............................................. 24

*DiVittorio v. Equidyne Extractive Indus., In.*,
   822 F.2d 1242 (2d Cir. 1987)................................................................................................... 5

*Dore v. Wormley*,
   690 F. Supp. 2d 176 (S.D.N.Y. 2010)..................................................................................... 25

*Ergowerx Int'l, LLC v. Maxell Corp. of America*,
   18 F.Supp.3d 430 (S.D.N.Y. 2014)................................................................................. 6, 7, 9

*Harris v. Mills*,
   572 F.3d 66 (2d Cir.2009)......................................................................................................... 5

*Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.*,
   665 F.Supp.2d 239 (S.D.N.Y 2009)...................................................................................... 8, 9

*Howell v. Am. Airlines, Inc.*,
   2006 WL 3681144 (E.D.N.Y. 2006)....................................................................................... 16

*In re Enron Corp.*,
   370 B.R. 583, 597 (Bankr. S.D.N.Y. 2007)........................................................................... 23

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
   62 F.3d 69 (2d Cir. 1995)......................................................................................................... 6

*James v. Countrywide Fin. Corp.*,
   849 F. Supp. 2d 296 (E.D.N.Y. 2012) .................................................................................... 16

*JBC Holdings NY, LLC v. Pakter*,
   932 F.Supp.2d 514 (S.D.N.Y 2013)......................................................................................... 6

*JM Sunrise Auto., LLC v. Volkswagen Group of America, Inc.*,
   997 N.Y.S.2d 270 (N.Y. Sup. Ct. Nov. 6, 2014) ................................................................... 12

*Johnson v. Nextel Commc' ns, Inc.*,
   660 F.3d 131 (2d Cir. 2011)............................................................................................. 16, 20

*L-7 Designs, Inc. v. Old Navy, LLC*,
   647 F.3d 419 (2d Cir. 2011)..................................................................................................... 5

*Lanzi v. Brooks*,
   54 A.D.2d 1057, 1058, 388 N.Y.S.2d 946, 948 (N.Y. App. Div. 1976) ................................. 12

*Laquila Grp., Inc. v. Hunt Const. Grp, Inc.,*
  44 Misc. 3d 1203(A), 2014 WL 2919334, (N.Y. App. Div. June 25, 2014) ............................ 8

*Lerner v. Fleet Bank, N.A.,*
 459 F.3d 273 (2d Cir. 2006)  5

*Mayor v. Jean Philippe Fragrances, Inc.,* No. 92 CIV. 6217 (LBS), 1994 WL 9684
  (S.D.N.Y. Jan. 10, 1994); ....................................................................................... 21

*McKernin v. Fanny Farmer Candy Shops, Inc.,*
  176 A.D.2d 233, 574 N.Y.S.2d 58 (N.Y.S.2d 1991) ............................................... 8

*Naporano Iron & Metal Co. v. American Crane Corp.,*
  79 F.Supp.2d 494 (D.N.J. 1999) ........................................................................... 7

*Netto v. Rastegar,*
  No. 21 Civ. 4580(CM), 2012 WL 4336167 (S.D.N.Y. Sept. 20, 2012) ................... 7, 12, 15

*Noble Thread Corp. v. Vormittag Associates, Inc.,*
  305 A.D.2d 386, 387, 758 N.Y.S.2d 509, 510 (2003)( .......................................... 21

*Orlander v. Staples, Inc.,*
  No. 13 CIV. 703 NRB, 2014 WL 2933152 (S.D.N.Y. 2014) ................................. 20

*Raymond Weil, S.A. v. Theron,*
  585 F.Supp.2d 473 (S.D.N.Y 2008) ..................................................................... 19

*Scott v. Palermo,*
  233 A.D.2d 869, 872, 649 N.Y.S.2d 289, 291 (1996). .......................................... 21

*Shields v. Citytrust Bancorp, Inc.,*
  25 F.3d 1124, 1128 (2d Cir. 1994) ....................................................................... 23

*Shively v. Mitchell,*
  No. 13 Civ. 2164, 2013 WL 5761498 (October 24, 2013 ..................................... 7

*Sirius Star v. Sturgeon Bay Shipbuilding & Dry Dock Co.,*
  196 F. 2d 479 (7th Cir. 1952) .............................................................................. 17

*Spanierman Gallery PSP v. Love,*
  2003 WL 22480055 (S.D.N.Y. Oct.31, 2003) ...................................................... 25

*State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC,*
  646 F.Supp.2d 668 (D.N.J. 2009) ........................................................................ 9

*Usov v. Lazar,*
  No. 13 CIV. 818 RWS, 2013 WL 3199652 (S.D.N.Y. 2013) ............................... 25

*Wolff v. Rare Medium, Inc.,*
210 F. Supp. 2d 490 (S.D.N.Y. 2002), *aff'd*, 65 F. App'x 736 (2d Cir. 2003) ...................... 18

*Wright v. Bank of Metropolis,*
18 N.E. 79 (N.Y. 1888) ........................................................................................................... 20

## STATUTES

Cal. Com. Code §2-309(1) ................................................................................................. 19, 20

## OTHER AUTHORITIES

Sarah Carta, *Highlights from the Field: ACEF supports African renewable energy projects for enduring development, OPIC.gov*, http://www.opic.gov/blog/opic-in-action/highlights-from-the-field-acef-supports-african-renewable-energy-projects-for-enduring-dev ................................................................................................................... 2

*U.S. Patent Application No.* (filed Jul. 18, 2007) .......................................................... 2

*U.S. Patent Application No.* (filed Jul. 30, 2007) .......................................................... 2

*U.S. Patent Application No.* (filed Jun. 16, 2010) .......................................................... 2

*U.S. Patent Application No.* (filed May 29, 2002) .......................................................... 2

*U.S. Patent Application No.* (filed Sep. 26, 2001) .......................................................... 2

U.S. Patent No. 5,250,867(filed Nov. 20, 1991) .............................................................. 2

U.S. Patent No. 5,815,058(filed Apr 2, 1997) .................................................................. 2

U.S. Patent No. 7,701,095(filed Jul. 30, 2007) ................................................................ 2

U.S. Patent No. 7,750,522(filed Jul. 18, 2007) ................................................................ 2

U.S. Patent No. 7,966,716(filed Jun. 16, 2010) ............................................................... 2

## RULES

Fed. R. Civ. P. 9(b) ....................................................................................................... passim

Fed. R. Civ. P. 10(c) ........................................................................................................... 6

Fed. R. Civl. P. 12(b)(6) .......................................................................................... 1, 4, 16, 21

# INTRODUCTION

Intelligen Power Systems, LLC's ("Intelligen's") Amended Complaint is legally and factually deficient on all counts and should be dismissed in its entirety. Its primary claim - fraudulent inducement - is based on a collection of seven representations, all of which merge with the contract, many of which lack Fed. R. Civ. P. 9(b) specificity or are statements of future expectations, and none of which are supported by facts demonstrating falsity, or a strong inference of intent to defraud. New York law and 9(b) require far more to sustain a companion fraud claim. Overshadowing these deficiencies, the fraud claim makes no plausible sense: it posits nine months of negotiations by dVentus Technologies, LLC ("dVentus") including a negotiated 5-year exclusive supply agreement, plus another ten months spent by dVentus on status communications, specifications and delivery issues, all while it supposedly never intended to perform. And dVentus's supposed scheme netted it only $78,000 and costly litigation. Even without the legal bar of this type of fraud claim, it would not survive dismissal under *Twombly*.

Similarly, Intelligen fails to adequately allege a breach of contract, and does not specify the actual terms breached. The contract documents themselves (which were not attached to the Amended Complaint but are herewith) contradict the key allegations. In particular, the principal allegation that dVentus could not provide a delivery date when asked in March 2014 omits that dVentus notified Intelligen that May 31, 2014 was the new delivery date. Intelligen's alternate allegation that dVentus agreed to "deliver" in 16 weeks is likewise unsupported by an actual agreement, and is contradicted by the documents Intelligen relies on.

Lastly, the replevin claim is equally meritless, since it cannot survive as a claim where the contract that already encompasses the property at issue. In short, none of Intelligen's claims are adequately stated to survive dismissal under 12(b)(6).

## BACKGROUND

### A.   THE PARTIES
#### 1.      dVentus and CEO Daniel Gizaw

dVentus specializes in designing and manufacturing highly specialized generators and electronics for clean energy technology.  (Am. Compl. ¶1.)  It is recognized by the United States Agency for International Development ("USAID")[1] as a partner, and the US Overseas Private Investment Corporation ("OPIC") staff visited dVentus's facilities and reported that it had an "impressive office and laboratory . . . focus[ing] on state-of-the-art technology."[2]  dVentus's facilities are certified as meeting the stringent ISO9001:2008 standard by the international arm of Underwriter's Laboratories.[3]  dVentus's CEO, Daniel Gizaw, is a named inventor on ten US Patents and applications for generators, electrical and mechanical applications.[4]

#### 2.      Intelligen and CEO David Lesser

Intelligen alleges that it "is a manufacturer of pre-packaged cogeneration equipment for onsite production of combined heat and power ("CHP") on an environmentally friendly basis." (Am. Compl. ¶17.)  David Lesser is the President and Managing Partner of Intelligen, and he communicated with and negotiated contract terms with dVentus.  (Am. Compl. ¶18.)

---

[1] US AID said dVentus "exemplifies…how small, innovative firms are changing the landscape of the power sector in Sub Saharan Africa."  *Private Sector*, USAID.gov (Jan. 22, 2015), http://www.usaid.gov/powerafrica/partners/private-sector#dv.

[2] Sarah Carta, *Highlights from the Field: ACEF supports African renewable energy projects for enduring development*, OPIC.gov (Aug. 12, 2014), http://www.opic.gov/blog/opic-in-action/highlights-from-the-field-acef-supports-african-renewable-energy-projects-for-enduring-development.

[3] The 2012 certification is available from US DQS Underwriter's Laboratory website at:  *dVentus Wind Technologies PLC*, MyDQS.com, https://www.mydqs.com/en/customers/customer database.html?aoemydqs%5Bcompany_no%5D=479699&aoemydqs%5Baction%5D=singleView&cHash=09ed3d1c83094ccebad8d40a56d8457a (last visited Jan. 28, 2015).

[4] U.S. Patent No. 7,966,716 (filed Jun. 16, 2010);  U.S. Patent No. 7,750,522 (filed Jul. 18, 2007); U.S. Patent No. 7,701,095 (filed Jul. 30, 2007);  U.S. Patent No. 5,815,058 (filed Apr 2, 1997);  U.S. Patent No. 5,250,867 (filed Nov. 20, 1991);  *U.S. Patent Application No.* 2010025139 (filed Jun. 16, 2010);  *U.S. Patent Application No.* 20080036215 (filed Jul. 18, 2007);  *U.S. Patent Application No.* 20080030085 (filed Jul. 30, 2007);  *U.S. Patent Application No.* 20030057800 (filed Sep. 26, 2001);  *U.S. Patent Application No.* 20030227230 (filed May 29, 2002), available at USPTO.gov.

**B.     THE CONTRACT AND NEGOTIATIONS**

Beginning in June 2012, dVentus and Intelligen engaged in a series of negotiations for dVentus to design and build a custom-built prototype of cogeneration equipment – a generator and inverter for residential and commercial buildings.  dVentus estimated 20 weeks for delivery "if everything looks good."  (Am. Compl.¶36.)   After six months of negotiations, dVentus submitted a March 22, 2013 Price Quotation with Terms and Conditions which unequivocally state, "Delivery schedules are estimated only," and that estimates assume work "without interruptions caused or requested by the Purchaser."  (Ex. 1, §1)[5]  The Price Quotation likewise set the terms for cancellation of any order, requiring payment for all work completed, reduced by any salvage value.  (Ex. 1 §9.)  On April 24, 2013 Intelligen submitted a Purchase Order for the quoted generators and converters.  (Ex. 2; Am. Compl.¶49.)

On May 7, 2013 dVentus sent Intelligen an Invoice for a $78,551.00 deposit.  (Ex. 3; Am. Compl.¶50.)   The parties signed a "Supply Agreement" on May 8, 2013.   (Ex. 4; Am. Compl.¶1.)   The Supply Agreement set terms for selling Intelligen generator and inverter packages, including a protocol for notice of breach, right to cure and termination of the agreement (Ex. 1 §§15-16) and limits available damages: "In no event, shall either party be liable to the other for any indirect, incidental, or consequential damages."  (Ex. 1 §12.)

Intelligen alleges that in October 2013, it "continued to seek updates" on the "status of the design, ordering of components and fabrication of the Equipment."  (Am. Compl.¶67.)  Intelligen does not allege any notice concerning a delivery date or breach in 2013, though Intelligen alleges several communications with dVentus including that, in December of 2013, Gizaw informed it that delivery would be in February 2014.  (Am. Compl.¶74.)

---

[5] Citations to "Ex. 1-6" are to exhibits attached to the Declaration of Frederick R. Juckniess.

3

## C. THE ALLEGED BREACH, FAILURE TO CURE, AND TERMINATION

The relationship began to suffer in February 2014, when Intelligen CEO David Lesser telephoned a dVentus investor to complain, and dVentus sent him a cease and desist notice.  (Ex. 6.)[6]  dVentus' counsel's sent a March 18, 2014 email, which detailed contract and development issues, and reminded Intelligen of its changes in specifications that resulted in additional time,[7] and specifically stated a delivery date: "dVentus estimates that the product will be ready for shipping to the United States on or before May 31, 2014."  (Ex. 5.)

On March 21, 2014, Ms. Danielle Lesser emailed a letter back stating that the new delivery date was "unacceptable" and claimed that dVentus "has anticipatorily repudiated the parties' agreement."  (Ex. 5).  The Amended Complaint relies on this letter as Intelligen's "notice" of material breach.  (Am. Compl.¶77.).

Intelligen initiated its action in New York and limited its claims to return of the deposit. (Dkt. 154084/2014).[8]  Its Amended Complaint substantially changed and expanded its claims.

### STANDARD OF REVIEW

To survive dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

---

[6] The Complaint incorporates the May 21, 2014 letter from Danielle Lesser, which included a March 3rd email and cites March 18th correspondence from dVentus counsel to Intelligen. [Cite] These documents may properly be considered at the 12(b)(6) stage as detailed below.

[7] Among other detail, the email stated: "The specification changes resulted in an additional 16 weeks of development and engineering time involving the efforts of six engineers, 2 techs and 1 program manager. This additional work then must be translated into new parts, some of which are obtained from overseas suppliers.  As a result, these changes and revisions increased the price of the product ordered and triggered the obligation of the parties to work, in good faith, to agree on new prices.  The cost of the additional development work alone is more than $460,000.  Although dVentus has allowed this to be postponed and has proceeded cooperatively focusing on delivery we should ensure that Intelligen through Mr. Cona is prepared to discuss this issue with dVentus and how it will be handled both presently and in the future."  (Ex. 6)

[8] "Plaintiff seeks damages in the amount of $78,551.00, plus pre-judgment interest and punitive damages and replevin of plaintiff's parts and equipment." ( Dkt. 154084/2014.)

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Second Circuit has held that plausibility depends on "the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's interferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011), *citing Iqbal*, 556 U.S. at 672-84.  "[A] court must accept as true all allegations contained in a complaint," but "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678; *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009) (internal citations omitted).

Under Rule 9(b), plaintiffs must meet a heightened pleading standard to allege fraud and must state with particularity the circumstances constituting fraud.  To enumerate the requirements: "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Continental Petroleum Corp., Inc. v. Corporation Funding Partners, LLC*, No. 11 Civ. 7801, 2012 WL 1231775 at *3 (S.D.N.Y. 2012)  (*quoting Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292-93 (2d Cir. 2006)).[9]

To meet Rule 9(b)'s requirements, "a complaint must allege facts that give rise to a strong inference of fraudulent intent." *Continental Petroleum,* 2012 WL 1231775 at *3 (S.D.N.Y. 2012) (internal citations omitted); *Berman v. Morgan Keegan & Co.,* 455 Fed. App 92, 95 (2d Cir. 2012) *accord, Ergowerx Int'l, LLC v. Maxell Corp. of America*, 18 F. Supp. 3d 430, 445 (S.D.N.Y. 2014).  Furthermore, although intent may be alleged generally, the Second

---

[9] The purposes of 9(b) include preventing plaintiffs from misusing a claim of fraud to initiate a strike suit, and protect defendants from unwarranted claims that harm their reputation and goodwill.  *DiVittorio v. Equidyne Extractive Indus., In.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

Circuit has warned that "we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculative and conclusory allegations." *JBC Holdings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 531-32 (S.D.N.Y 2013).   Accordingly, complaint must contain well-pled factual allegations that "give rise to a strong inference of fraudulent intent." *Id.* (citation omitted); *Berman*, 455 Fed. App. at 95. Conclusory pleading on these requirements is inadequate, and warrants dismissal. *Ergowerx*, 18 F. Supp. 3d at 446.

Finally, the court may consider certain additional documents not attached to the complaint: "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (*quoting Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *see also* Fed. R. Civ. P. 10(c).   Even if not incorporated by reference, the court may nevertheless consider a document where the complaint "relies heavily upon its terms and effect," which renders it integral to the complaint.   *Int'l Audiotext*, 62 F.3d at 72; *see also ATSI Commc'ns v. Shaar Fund Ltd*, 493 F.3d 87, 98 (2d Cir. 2007).

# I.   INTELLIGEN'S FRAUDULENT INDUCEMENT CLAIM IS LEGALLY AND FACTUALLY DEFICIENT AND SHOULD BE DISMISSED (COUNT I)

Intelligen's Amended Complaint asserts precisely the type of fraudulent inducement claim barred by law and Rule 9(b).   The Amended Complaint attempts to expand a simple order and cancellation into a complex and highly implausible fraud claim.   This is improper where a contracting party is disappointed by alleged non-performance and seeks advantage or retaliation in litigation.   Rule 9(b)'s heightened pleading requirement "gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the

number of frivolous suits brought solely to extract settlements." *Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F.Supp.2d 494, 511 (D.N.J. 1999).

To make out a viable claim for fraudulent inducement, "a plaintiff must assert the misrepresentation of a material fact, which was known by the defendant to be false and intended to be relied on when made, and that there was justifiable reliance and resulting injury." *Shively v. Mitchell*, No. 13 Civ. 2164, 2013 WL, at *5 5761498 (S.D.N.Y 2013) (*quoting Braddock v. Braddock*, 60 A.D.3d 84, 871 N.Y.S.2d 68, 70 (1st Dep't 2009)).

To sufficiently allege that a representation was knowingly false, a party must include well-pled facts to support the plausible inference that the speaker did not believe the statements to be true when he or she made them.  Failure to do so warrants dismissal.  *Id.*  Furthermore, non-performance will not satisfy Plaintiff's burden to allege that the promise was fraudulent as made. *Netto v. Rastegar*, No. 21 Civ. 4580(CM), 2012 WL 4336167, at *6 (S.D.N.Y. 2012); *see also Ergowerx*, 18 F.3d at 445-446.  Simply repeating that the statements were false and known to be so, without concrete facts, warrants dismissal.  *Ergowerx*, at 446. For all representations, Intelligen only alleges the blanket conclusion that all were false.  (Am. Compl.¶¶90-91).

Intelligen's fraudulent inducement claim results from its own failure to take advantage of its bargained-for, contractual right to access and review dVentus' factory.  (Ex. 4 § 10.3.) Instead of visiting dVentus' factory and verifying its capabilities, Intelligen's Amended Complaint alleges seven fraudulent representations by dVentus.  They allege:

 a. dVentus had a facility in Ann Arbor, Michigan where dVentus would assemble and test the Equipment for Intelligen;
 b. dVentus possessed a generator and converter package designed for the wind turbine industry which could be easily adapted to CHP;
 c. dVentus had sufficient manpower and engineering expertise to adapt its technology to CHP including the needs of Intelligen's customers, as well as the NYSERDA and Con Ed requirements;

d. dVentus employed over 30 design engineers who possessed the relevant experience to ensure timely fabrication of the Equipment and to timely and promptly fulfill Intelligen's orders;

e. Gizaw personally had electrical engineering capability sufficient to design and manufacture the Equipment;

f. dVentus had the capability of configuring the Equipment for use with 208 Volt or 480 Volt; and

g. dVentus possessed the financial resources to complete the design and manufacture of the Equipment.

(Am. Compl. ¶ 93.)

Not one of the representations alleged in Intelligen's Amended Complaint is sufficient to support a claim of fraud.

**A. All Seven Representations Relate to Performance under the Contract and Cannot Support Fraudulent Inducement.**

As a matter of law, fraudulent inducement cannot be based on an intentionally false representation concerning whether a party intended to perform a contract or abide by its terms. *Laquila Grp., Inc. v. Hunt Const. Grp, Inc.*, 44 Misc. 3d 1203(A), 2014 WL 2919334, at *10 (N.Y. App. Div. June 25, 2014); *Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 254 (S.D.N.Y 2009) (dismissal of fraudulent inducement where allegations were "indistinguishable from a claim alleging that a defendant committed fraud by entering into a contract with no intention of performing"). Similarly, a plaintiff who is also claiming breach of contract may not, as a matter of law, plead a fraudulent inducement claim unless the representations are concerning material facts that are "collateral or extraneous to the terms of the parties' agreement." *Continental Petroleum Corp., Inc. v. Corporation Funding Partners, LLC*, No. 11 Civ. 7801, 2012 WL 1231775, at *10 (S.D.N.Y 2012) (*quoting McKernin v. Fanny Farmer Candy Shops, Inc.*, 176 A.D.2d 233, 234, 574 N.Y.S.2d 58, 59 (N.Y. Sept. 9, 1991)).

To state such a claim, a plaintiff must "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or

extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Id.* Intentionally false statements concerning intent to perform cannot support a claim of fraud under New York law. *Continental Petroleum*, 2012 WL 1231775 at *10, *citing Bridgestone/Firestone*, 98 F.3d 13, 20 (2d Cir. 1996); *see also*, *Ergowerx*, 18 F.Supp.3d 43, *quoting State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 676 (D.N.J. 2009) (misrepresentations must be "unrelated to the performance of the contract" or be dismissed). Stated another way, a party cannot "dress[] up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder" and avoid dismissal. *Continental Petroleum*, 2012 WL 1231775 at *10. Each of the seven representations alleged by Intelligen concerns whether dVentus had the capability or resources to design and construct the synchronous generators and inverter packages that Intelligen ordered from dVentus. (Am. Compl.¶93-g.) Intelligen fails to allege any representations that are collateral or extraneous to the contract. As such, Intelligen's alleged representations cannot form the basis of a fraudulent inducement claim.

For example, Intelligen alleges that dVentus represented it "possessed the financial resources to complete the design and manufacture of the Equipment" (Am. Compl.¶93g) and "had sufficient manpower and engineering expertise" to produce the equipment. (Am. Compl.¶93c.) Similar allegations about production capabilities could not survive dismissal in *Ho Myung*, 665 F. Supp. 2d at 254. There, the defendant allegedly claimed it "had production capacity that it did not, in fact possess," which was indistinguishable from alleging that the defendant entered into the contract with no intention to perform and, thus required dismissal. *Id.*

Moreover, Intelligen itself alleges that dVentus's capabilities became a contractual requirement (Am. Compl.¶55), and Intelligen even separately alleges that this contract provision was eventually breached.  (Am. Compl.¶105.)  Similarly, Intelligen alleges that dVentus represented, "dVentus had the capability of configuring the Equipment for use with 208 Volt or 480 Volt."  (Am. Compl.¶93f.)  The parties then contracted for the production of equipment with specified voltage, and there is no allegation how this expectation of future configuration was false.  Quite simply, not one of the seven representations regarding dVentus's ability to produce is outside the scope of the contract or could support a fraudulent inducement claim.

**B.      Four of Seven Representations Fail to Meet the Basic 9(b) Requirements**

A statement does not meet the requirements of Fed. R. Civ. P. 9(b) when it fails to identify the speaker, the person to whom the statement was made, or where and when the statement was made.  Four of Intelligen's alleged representations fail to identify either the speaker (Am. Compl.¶¶93d, 93g) or when the statement was made.  (Am. Compl.¶¶93a, 93d, 93e, 93g.)

As an example of this failure and the general imprecision of Intelligen's fraudulent inducement pleading, the allegations in Paragraph 93e do not align with any facts presented in the Amended Complaint.  Paragraph 93e alleges the representation that "Gizaw personally had electrical engineering capability sufficient to design and manufacture the Equipment." (Am. Compl.¶93e.)  However, this representation mischaracterizes Mr. Gizaw's alleged statements in Paragraph 41a ("He personally had electrical engineering capability and was supported by a team of additional engineers").  (Am. Compl.¶41a.)  The alleged representation in Paragraph 93e also mischaracterizes Mr. Gizaw's alleged statement in Paragraph 6 ("dVentus' principal, Daniel Gizaw ('Gizaw'), claimed that he personally had

10

relevant experience in the fabrication of the Equipment.")  (Am. Compl.¶6.)  The allegation in Paragraph 93e thus has no factual support for when it was said, where it was said, by whom it was said, or to whom it was said.

Paragraph 93d suffers from the exact same lack of any factual basis.  Intelligen alleges that on April 14, 2013 Mr. Gizaw stated that "dVentus had over 30 design engineers."  (Am. Compl.¶41d.)  The Amended Complaint thus provides no factual support for its allegation that dVentus represented it "employed over 30 design engineers *who possessed the relevant experience to ensure timely fabrication of the Equipment and to timely and promptly fulfill Intelligen's orders*."  (Am. Compl.¶93d, *emphasis added*.)  Such allegations completely fail to meet 9(b)'s heightened pleading requirements.

## C.    Intelligen Fails to Allege Facts Explaining the Falsity of Any Representation.

The  fraud  claims  fail  on  the  separate  ground  that  Intelligen  fails  to  allege  facts demonstrating that any representation was false when made (setting aside legally inadequate allegations of non-performance).  To survive dismissal, "plaintiffs cannot rest on their say-so in asserting that statements are fraudulent; they must explain why."  *City of Omaha v. CBS Corp*, No. 08 Civ. 10816(PKC), 2010 WL 1029290, at *10 (S.D.N.Y. 2010) (quotation omitted, collecting cases); *Carvel v. Ross*, No. 09 Civ. 0722(LAK), 2011 WL 856283, at *22 (S.D.N.Y. 2011) (plaintiff "has not explained why [the] statement [at issue] was fraudulent").

Yet,  after  listing  the  seven  representations,  Intelligen  lumps  them  all  together  and concludes  generally:  "These  representations  were  false  when  made."    (Am. Compl.¶94.) Intelligen's say-so is not enough to support fraudulent inducement with respect to *any* of the representations.  Intelligen presents no evidence that it did any due diligence whatsoever by asking for references, visiting dVentus' facility, or engaging in any sort of investigation of dVentus.  Instead, Intelligen asks this Court to believe it justifiably relied solely on dVentus'

alleged representations.  Such a failure to allege justifiable reliance warrants dismissal.  *Lanzi v. Brooks*, 54 A.D.2d 1057, 1058, 388 N.Y.S.2d 946, 948 (N.Y. App. Div. 1976) *aff'd*, 43 N.Y.2d 778, 373 N.E.2d 278 (N.Y. Ct. App. 1977); *Netto,* 2012 WL 4336167, at *7.

Arguably, there is one allegation that goes farther, where Intelligen alleges: "[u]pon information and belief, dVentus does not have a factory in Ann Arbor, MI."  (Am. Compl.¶72.)  Although this might have been sufficient to support an unambiguous allegation, it remains inadequate because it is too imprecise.  *JM Sunrise Auto., LLC v. Volkswagen Group of America, Inc.*, 997 N.Y.S.2d 270, 291 (N.Y. Sup. Ct. Nov. 6, 2014) (dismissal of fraudulent inducement claim where "misrepresentation lacks the requisite specificity to be actionable").  Intelligen does not allege whether it believed that dVentus *owned* a "factory" or "facility" in Ann Arbor, *leased* facilities, or that it "had" a facility in Ann Arbor, which it utilized or hired for testing and assembly, even if owned or operated by other entities.  Indeed, Intelligen's Complaint is not even sufficiently precise as to allege that dVentus did not "have" a facility at the time the representation was allegedly made, only that it does not "have" one now, in March, 2015.  It even fails to allege whether the "factory" and "facility" (alleged in different paragraphs) are materially different things.  *Compare* Compl. ¶¶72 and 93a.

Moreover, the contract itself renders the idea that dVentus would misrepresent anything about its facilities implausible and renders reliance on this "fact" unreasonable.  The Supply Agreement granted Intelligen access to the facilities contracted by dVentus: "If desired by BUYER, SELLER shall also make every reasonable effort to cause its contractors to likewise grant BUYER or representatives of BUYER access to its production plants and permit review of production activity."  (Ex. 4 at §10.3.)  There is no way to square these facts

with a claim that dVentus knowingly and intentionally misrepresented that did not "have" a facility to perform testing and assembly in Ann Arbor, through contractors or otherwise.

**D.      None of the Seven Allegations Are Supported by Facts Establishing Intent to Defraud.**

A plaintiff claiming fraudulent inducement must allege facts sufficient to support "a strong inference of fraudulent intent" or face dismissal. *Acito v. IMJCERA Grp. Inc.*, 47 F.3d 47, 52 (2d Cir. 1995). The quality of facts necessary to meet this standard must demonstrate "a motive for committing fraud and a clear opportunity for doing so," or "when the motive is not apparent," "identify[] circumstances indicating conscious behavior by the defendant." *Allison v. Round Table Investment Management Co., LP*, No. 10 CV 01144(GBD), 2010 WL4456648 at *3 (S.D.N.Y. 2010) (dismissal for failure to adequately plead intent to defraud); *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03. Civ. 1537(MBM), 2003 WL 23018888, at *13 (S.D.N.Y. 2003)("[Plaintiff] has failed to plead a cause of action for fraudulent inducement because it has not alleged that Citibank knew the statements to be false at the time the statements were made or that Citibank intended to defraud BESI"). After facts are pled that can support a "strong inference" of fraudulent intent, "the court must take into account plausible opposing inferences" and the alleged intent must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *JBC Holdings*, 931 F. Supp. 2d at 533.

The Amended Complaint abandons Intelligen's initial argument that dVentus' alleged fraudulent conduct was directed at stealing $78,551.00 from Intelligen. Intelligen now alleges that dVentus' conduct was directed at garnering investors. Unfortunately for Intelligen, its new theory still fails to hold water. Intelligen claims that:

> dVentus made these representations intending that Intelligen would rely upon them and would agree to enter into the Agreement. dVentus did so in order to secure the Agreement with Intelligen and also, upon information and belief, to use the Agreement with Intelligen to help obtain financing from other sources.

> Upon information belief [sic], dVentus was negotiating to obtain financing from a third party at the time the Agreement was signed and had not secured that financing until after the Agreement was signed.

(Complaint ¶95-96.)  Intelligen asks this Court to believe that dVentus engaged in nine months of negotiations and ten months of status meetings and engineering work to secure a 35% deposit on a $227,102 contract.  Intelligen then asks this Court to believe that this 35% deposit on contracts requiring dVentus to invest an enormous amount of time and manpower would somehow encourage investors to pour money into dVentus.

A similar failure to allege a plausible set of facts warranted dismissal in *JBC Holdings NY, LLC*, where the court explained:

> Plaintiffs argue that [defendants] must have never intended to meet their projected target revenues, because they failed to produce *any* revenues. . . .They promised millions, and allegedly brought in zilch.  But it does not follow from [defendants'] failure to bring in any revenue that they never intended to earn revenues.  That theory tacitly assumes that [defendants] audaciously intended to promise millions, deliver nothing, set up a competing enterprise, and get away scot free, without ever being held to account in court or otherwise for their perfidy.  But plaintiffs have failed to allege a plausible motive for such an audacious and frankly unrealistic plan.

*JBC Holdings*, 931 F.Supp.2d at 534.  Here, the implausibility is even more compelling.  Even if one could accept the implausible waste of time for little money, dVentus has compelling reasons to avoid such perfidy.  dVentus has no reason to risk its reputation with US government entities. It sells to others in the US, and negotiated terms for Intelligen to distribute under a 5-year supply agreement.  (Ex. 4 at §9.)  No facts create a "strong inference" that dVentus and its prominent CEO would use their time on an elaborate and time-consuming hoax.  Far more compelling is the truth: dVentus and Intelligen negotiated a contract, dVentus put a substantial amount of work into fulfilling the contract, Intelligen changed the specifications on its order, and Intelligen purported to cancel the contract because it was not satisfied with the delivery date.  While more

14

questions—and more plausible explanations—could be considered in examining Intelligen's non-existent factual support for its fraud theory, the facts pled render the claim implausible.

**E.      Intelligen Fails to Allege Materiality of Two Representations.**

Intelligen provides no factual support to meet the materiality requirement for two of its representations, which has particular significance here given the imprecision and generality of the alleged representations.  *Netto,* 2012 WL 4336167, at *5.   First, Intelligen fails to allege how or why it is material that dVentus allegedly represented that it has "30 design engineers." Intelligen's own Amended Complaint contradicts the materiality of that claim by alleging that it knew only "six engineers…would be assigned to Equipment fabrication."  (Comp ¶38.) Nothing else is alleged about needing 30, or any other number, of workers for this order. (Am. Compl.¶93d.)  No allegations support or establish the materiality of this representation. Intelligen further fails to allege the materiality of dVentus' alleged representation that "dVentus possessed the financial resources to complete the design and manufacture of the Equipment." (Am. Compl.¶93d.)

Finally, Intelligen alleges that all seven representations together induced it to sign the contract.  (Am. Compl.¶97.)  As alleged, if any one representation fails as a matter of law—even for a failure to allege materiality—then the entire claim must be dismissed.

**II.     PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST THE DEFENDANT FOR BREACH OF CONTRACT (COUNT II)**

Intelligen asserts violations of four sections of the Supply Agreement in Count II of its Amended Complaint.  Just as with its fraud claim, its contract claim is fatally deficient.  This Court should dismiss this claim as well.

New York law requires that a complaint for breach of contract allege: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to

perform; and (iv) damages." *Johnson v. Nextel Commc' ns, Inc.,* 660 F.3d 131, 142 (2d Cir. 2011). Intelligen fails to adequately allege each element. Most saliently, the parties' contract included a cancellation clause that governs the terms of Intelligen's cancellation and bar Intelligen's claim for damages.

A.    **Intelligen's Fails to Adequately Allege a Breach of Contract Concerning a 16-Week Delivery Date.**

Intelligen fails to adequately allege an agreed-upon 16-week delivery date. "In order to adequately allege the existence of an agreement, a plaintiff must plead the provisions of the contract upon which the claim is based." *James v. Countrywide Fin. Corp.,* 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012), *citing Howell v. Am. Airlines, Inc.,* 2006 WL 3681144, at*3 (E.D.N.Y. 2006) (internal quotation marks omitted). This requires the inclusion of "the terms of the agreement upon which liability is predicated by express reference." *Id.* Failure to make express reference is grounds for dismissal under Fed. R. Civ. P. 12(b)(6). *See James v. Countrywide Fin. Corp.,* 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012) (partial dismissal of a complaint for failure to specify the terms of the agreement "upon which liability is predicated").

Intelligen alleges, "In violation of Section 2.2 of the Agreement and the Invoice, dVentus failed to deliver the Equipment requested by Intelligen in the Purchase Order within the contractually-required 16 weeks under the Invoice." (Am. Compl.¶103.) But the Invoice contradicts the allegation. The Invoice's "Ship Date" section reads, "16 Wks est." (Ex. 3.) Neither the Invoice nor the Supply Agreement establishes a fixed 16-week delivery term. (Am. Compl.¶103.)

That this was only an estimate in the Invoice—and not a contractual term or firm delivery date—is confirmed by other items in Intelligen's Amended Complaint, which acknowledge:

16

"By email dated January 27, 2013, Gizaw confirmed that the delivery would take 20 weeks **'if everything looks good.'**" (Am. Compl.¶36, emphasis added.)

"On March 18, 2013, Gizaw sent an email to Cona providing a pricing **estimated lead-time of 16 weeks**, plus 4 weeks for testing, plus the time to ship components from Ethiopia to Ann Arbor." (Am. Compl.¶40, emphasis added.)

During an April 13, 2013 meeting, "Gizaw stated that lead times for the first set of units was **approximately** sixteen weeks…" (Am. Compl.¶42, emphasis added.)

Moreover, Plaintiff's Purchase Order makes no reference to delivery date at all. (Exs. 1 & 2.)

In short, Intelligen's vague pleading attempts to rewrite the contract, and has failed to adequately state a claim for breach of a 16-week delivery date. For the court to impose such an obligation on dVentus would violate the principle of contract construction that "[a] court should not interpret a contract in a manner that would be . . . contrary to the reasonable expectations of the parties." [10] *Brown v. Lower Brule Cmty. Dev. Enter., L.L.C.,* No. 13-CV-7544 PKC, 2014 WL 5508645, at *4 (S.D.N.Y. 2014).

The Amended Complaint further alleges that this action was commenced after Plaintiff requested a delivery date in March 2014. (Am. Compl.¶76.) Therefore, as of March 2014 Plaintiff was behaving as if the contract between the parties were still in full force, and not as if the contract had been irrevocably breached by failure to deliver in a sixteen-week period.

Moreover, Intelligen even fails to allege (because it could not) the necessary facts that it did not cause or request interruptions in connection with specification adjustments. In fact, Intelligen corroborates its requested changes by admitting required parts were not sent until

---

[10]Where an estimated date is an agreed-upon term, failure to "deliver" by the estimated date is not automatically a breach of contract in any event. Where an estimated shipping term is actually made part of a contract "the only obligation of the [seller] [is] to exercise its best efforts to complete by that date." *See, e.g. the Sirius Star v. Sturgeon Bay Shipbuilding & Dry Dock Co.*, 196 F. 2d 479 (7th Cir. 1952). Here, Intelligen fails to adequately allege the estimate was a contract term, let alone facts demonstrating that dVentus failed to exercise its best efforts.

September 2013.  (Am. Compl.at ¶53)    How or when the parties agreed on a sixteen-week delivery date is missing from Intelligen's Amended Complaint.

The Amended Complaint also cites Section 2.2 and 8.4 of the Supply Agreement as the source of the 16-week delivery date.  (Am. Compl.¶103.)  Section 2.2 is not relevant, but states, "SELLER [dVentus] shall be obligated to sell to BUYER [Intelligen] in accordance with the terms of this agreement Planned Volume, as applicable, subject to the BUYER's not being in material breach of this Agreement."  (Ex. 4 §2.2.)  There is no allegation of "Planned Volume" or the other forecast and reporting requirements of 2.2.  In short, no allegations establish how 2.2 was breached.  Instead, it is another failure of Intelligen to identity "the specific provision that was breached as a result of the acts at issue."  *Wolff v. Rare Medium, Inc*., 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002) *aff'd*, 65 Fed. App. 736 (2d Cir. 2003).  The same inadequacy exists with Intelligen's allegation that, "[i]n violation of Section 8.4 of the Agreement, dVentus postponed delivery of the Equipment for a period greater than 4 weeks."  (Am. Compl.¶99) (Ex. 4 §8.)  The allegation does not meet the contract terms or adequately allege a breach.

Intelligen is required to allege the actual contract terms that were breached to state a claim for breach of contract.  It has failed to do so in its Amended Complaint.

**B.    The Breach of Contract Claim Must be Dismissed Because dVentus Cured
Any Alleged Breach.**

Intelligen's allegations also present a theory contradicting the 16-week delivery breach.  It alleges that on March 21, 2014, Intelligen emailed a "notice of material breach" and that the breach went uncured.  (Am. Compl.¶77.)  The actual documents, which this Court may consider because they are integral to the complaint, contradict these allegations.  *Broder v. Cablevision Sys. Corp.,* 418 F.3d 187, 196 (2d Cir. 2005).  A cured breach of contract is not actionable, because the point of a cure provision "is to allow the parties…to correct their course and

maintain the promises in their contract." *Raymond Weil, S.A. v. Theron*, 585 F.Supp.2d 473, 484 (S.D.N.Y 2008) (dismissing a breach of contract suit against actress Charlize Theron because the breach—an advertisement featuring Theron wearing a watch belonging to a designer other than the plaintiff—was cured within five days, as required by the contract's termination section.)

The Amended Complaint alleges that "Intelligen put dVentus on notice of dVentus' material breach of the Agreement by written letter dated March 21, 2014."  (Am. Compl.¶78.) Intelligen fails to attach this letter, which contains no notice of material breach.  The letter was written by Danielle Lesser, counsel for Intelligen, and states that dVentus' actions and failure to deliver "make very clear that your client has anticipatorily repudiated the parties' agreement." (Ex. 6.)  In particular, Ms. Lesser objects that dVentus had not delivered on the contract, and that dVentus' provision of a May 31, 2014 delivery date was "unacceptable."  (Ex. 6)  Intelligen fails to allege that this emailed "notice" met the requirements of "Notice" in the Contract, which it unambiguously does not.[11]  It is not addressed or sent as required, nor does it contain a plain statement of breach.  Furthermore, the allegation cannot be reconciled with Intelligen's own letter and the March 18 email that stated "dVentus estimates that the product will be ready for shipping to the United States on or before May 31, 2014."  (Ex. 5.)  As such, the breach alleged is contradicted or, at worst, was cured by providing a delivery date.  (Ex. 4 §13.)  Accordingly, Intelligen's breach of contract claim should be dismissed.

**C.   The Breach of Contract Claim Must be Dismissed Because dVentus Did Not Fail to Deliver Within a Reasonable Time under New York Uniform Commercial Code §2-309(1).**

---

[11] The Supply Agreement provides: "All notices under this Agreement shall be deemed to have been effectively given when sent by certified mail, overnight delivery or other courier service, signature required, properly addressed to the other party at the below address of at such address as the party has designated in writing."  (Ex. 4 §15.)

Intelligen alternatively alleges that dVentus failed to deliver within a "reasonable time" under New York Uniform Commercial Code §2-309(1).  (Am. Compl.¶103.)  Once again, the Complaint provides no support for this allegation.  N.Y. UCC §2-309(1) provides that delivery time, if not "agreed upon shall be a reasonable time."  Under New York law, "[w]hat is a reasonable time when the facts are undisputed, and different inferences cannot reasonably be drawn from the same facts, is a question of law." *Wright v. Bank of Metropolis*, 18 N.E. 79, 85 (N.Y. 1888).  The facts, even as alleged by the Amended Complaint, evince that, as a matter of law, dVentus did not fail to deliver within a reasonable time.

When the N.Y. UCC provides for a reasonable amount of time for some action, reasonableness is dependent on three factors: the nature, purpose, and circumstances of the action.  N.Y. UCC §1-204.  The Amended Complaint fails to provide any facts or basis to support its claim that the nature, purpose, or circumstances of the contract between the parties demonstrates that dVentus violated N.Y. UCC §2-309(1) and §1-204.  In fact, the Amended Complaint fails to mention that dVentus provided, on March 18, 2014, a May 31, 2014 delivery date.  (Ex. 5.)  Once again, the facts and applicable law demonstrate the baselessness of the Amended Complaint's allegations.

**D.     The Breach of Contract Claim Must be Dismissed Because the Amended Complaint Fails to Allege Damages Cognizable by Law.**

Intelligen fails to allege damages cognizable by law, because all of the damages Intelligen seeks are barred by the Supply Agreement, New York Law, and the Terms and Conditions of the Price Quotation that formed the basis of the contract between the parties.

New York law requires a claim for breach of contract to allege damages.  *Johnson,* 660 F.3d at 142.  A complaint without an allegation of damages must be dismissed.  *See Orlander v. Staples, Inc*., No. 13 CIV. 703 NRB, 2014 WL 2933152, at *6 (S.D.N.Y. 2014) (Issuing a

12(b)(6) dismissal for lack of damages where Staples violated a service warranty by failing to refer the plaintiff to a nearby repair center as contractually obligated, instead referring plaintiff to the manufacturer, under whose warranty plaintiff's computer could have been repaired at no cost).

The Supply Agreement explicitly states, "In no event, shall either party be liable to the other for indirect, incidental, or consequential damages." (Ex. 4 §14.2.) Termination of the contract does not provide Intelligen with the right to any refund nor any other damages. Absent unconscionability, New York courts uphold contractual limitation of liability clauses. N.Y. U.C.C. Law § 2-719. *See, e.g. Mayor v. Jean Philippe Fragrances, Inc.,* No. 92 CIV. 6217 (LBS), 1994 WL 9684, at *5 (S.D.N.Y. 1994); *Noble Thread Corp. v. Vormittag Associates, Inc.,* 305 A.D.2d 386, 387, 758 N.Y.S.2d 509, 510 (N.Y. App.. Div. 2003) (granting summary judgment on allegations seeking consequential damages where contract provided a "clear and unambiguous" limitation of liability); *see also Mom's Bagels of New York, Inc. v. Sig Greenebaum, Inc.,* 164 A.D.2d 820, 822, 559 N.Y.S.2d 883, 885 (N.Y. APP. Div. 1990).

There is an especially strong interest in upholding limitations of liability in a commercial contract where, as here, the provision is "clear and conspicuous" and the party seeking consequential damages did not "lack[] a meaningful choice." *Scott v. Palermo*, 233 A.D.2d 869, 872, 649 N.Y.S.2d 289, 291 (N.Y. App. Div. 1996).

Despite these explicit contractual terms, Count II seeks two forms of damages: "(a) $485,551.00 in out-of- pocket damages, plus the loss of its Parts or the monetary equivalent thereof; and (b) general and foreseeable damages arising from the net losses associated with the First and Second Avalon Projects." (Am. Compl.¶107.)

Count II's claim for out-of-pocket damages is improper and misplaced.  Out-of-pocket damages are not a measure of damages for breach of contract, but a measure of damages for fraudulent inducement.  *See, e.g., Lama Holding Co. v. Smith Barney, Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996) ("The true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong" or what is known as the "out-of-pocket" rule").

The general and foreseeable damages sought by Intelligen are limited by New York law. New York permits a non-breaching party to cover the breached contract and receive "the difference between the cost of cover and the contract price." *Credit Suisse First Boston v. Utrecht Am. Fin. Co*., 30 Misc. 3d 879, 882, 914 N.Y.S.2d 600, 603 (Sup. Ct. 2010) *aff'd sub nom. Credit Suisse First Boston v. Utrecht-Am. Fin. Co.*, 84 A.D.3d 579, 923 N.Y.S.2d 482 (N.Y. App. Div. 2011).  Intelligen's replacement contract with Thomas & Betts was for $162,962.00.  Its original contract with dVentus was for $227,102.00.  There is no cover to be awarded in this case, because any damage award would provide Intelligen with a windfall.

Finally, the general and foreseeable damages, as well as the $78,551.00 prayed for in the Amended Complaint, are barred by the Terms and Conditions of the March 22, 2013 Price Quotation that forms the basis of the contractual relationship between Intelligen and dVentus. The Price Quotation's Terms and Conditions contained this unambiguous contract term:

> Cancellation Clause:  This order may be cancelled by the Purchaser in whole or in part with fifteen (15) days prior written notice to dVentus.  Upon any such cancellation, liability of purchaser shall be limited to payment for the portion of contract completed to the date of receipt by dVentus of notice of cancellation . . . provided, however, that if in said written notice of cancellation the Purchaser elects not to take delivery of the complete portion of said contract, the liability of the Purchaser shall be reduced by the salvage value of all work in progress.

(Ex. 1 at §9.)

Attempting to conceal from the Court that its damages claims are barred by the Price Quotation cited in the original Complaint, Intelligen improperly removed reference to the Price Quotation from the Amended Complaint. Compare Compl. ¶85 and Am. Compl. ¶87.  While "an amended complaint ordinarily supersedes the original, and renders it of no legal effect, a court may refuse to allow an amendment where, by omitting allegations from the previously filed complaint, the plaintiff seeks to 'erase' admissions that are contained in it."  *In re Enron Corp*., 370 B.R. 583, 597 (Bankr. S.D.N.Y. 2007) (citing *Shields v. Citytrust Bancorp, Inc*., 25 F.3d 1124, 1128 (2d Cir. 1994)) (also citing *Austin v. Ford Models, Inc*., 149 F.3d 148, 155 (2d Cir. 1998)) (internal quotations removed).  A party cannot simply delete a document from an amended complaint to free itself from its obligations under that document.  *See, e.g., Tron Corp. v. Rockwell Automation, Inc*., No. CIV.A. 09-0733-WS-C, 2010 WL 653760, at *6 (S.D. Ala. 2010) (holding a party is bound by negotiation and mediation procedures, even though its amended complaint deleted reference to such contractual obligations); *see also Garley v. Sandia Corp.,* 236 F.3d 1200, 1210 (10th Cir. 2001) (considering a collective bargaining agreement where plaintiff excised reference to it, "attempting to show that his complaint was not based on the collective bargaining agreement").

A party seeking to amend a complaint to "omit an allegation that defeats its claim for relief must present a legitimate explanation for its previous inclusion, such as it having been the result of a mistake or inadvertence."  *In re Enron Corp*., 370 B.R. at 598.  Intelligen made no such representation, but instead omitted all reference to the Price Quotation in a bald attempt to escape its dispositive effect on this litigation.

The Price Quotation cited in the original Complaint and its Terms and Conditions are part of the contract between the parties, notwithstanding Intelligen's decision to delete reference to

them and failure to plead their terms.  This Court should consider the Price Quotation not only because Plaintiff included it in its original Complaint, but because the Amended Complaint relies heavily on it.  "Where a plaintiff has relied on the terms and effect of a document in drafting the complaint, and that document is thus integral to the complaint, we may consider its contents even if it is not formally incorporated by reference."  *Broder v. Cablevision Sys. Corp.,* 418 F.3d 187, 196 (2d Cir. 2005) (internal quotation marks omitted).  The terms on the Purchase Order and Invoice were based on dVentus' Price Quotation and its Terms and Conditions which were sent to Intelligen in March 2013.  This document is an integral part of the parties' contract.

The dVentus Price Quotation clearly states that Intelligen is liable for "payment for the portion of the contract completed…reduced by the salvage value of all work in progress."  (Ex. 1 at §9.)  Intelligen's claims for general and foreseeable damages, the $78,551.00 deposit, and the cost of the parts sent to dVentus are barred by the Terms and Conditions.  Plaintiff does not allege objections or alterations to the Terms and Conditions, and they are contractually enforceable.  *See, e.g., Day Spring Enterprises, Inc. v. LMC Int'l, Inc.,* No. 98-CV-0658A(F), 2004 WL 2191568 (W.D.N.Y. 2004) (holding terms and conditions included in a price quotation are enforceable when received by the buyer and buyer's purchase order raised no objections).

Intelligen has failed to allege any damages that are recoverable under the contract.  Count II must be dismissed for lack of cognizable damages.

## III.   PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST THE DEFENDANT FOR REPLEVIN (COUNT III)

Intelligen adds a claim for Replevin in Count III which is not adequately pled, merely restates its breach of contract claim, and is thus barred.  New York law requires a claim for Replevin to establish (1) "that the defendant is in possession of certain property of which the plaintiff claims to have a superior right," (2) that a demand was made for return of the chattel,

and (3) that plaintiff refused to return the chattel.  *Dore v. Wormley*, 690 F. Supp. 2d 176, 183

(S.D.N.Y. 2010).   Furthermore, where the plaintiff fails to "allege any independent duty by

Defendants outside of the purported contracts, Plaintiff fails to adequately state a claim for

replevin."  *Usov v. Lazar*, No. 13 CIV. 818 RWS, 2013 WL 3199652, at *7 (S.D.N.Y. 2013);

*Spanierman Gallery PSP v. Love,* 2003 WL 22480055, at *3 (S.D.N.Y. 2003) (dismissing

replevin claim alleging that Defendants did not return object in violation of contract).

      Intelligen's Amended Complaint neither acknowledges that it is covered by, and limited

to, the contract terms nor attempts to allege facts to state a replevin claim.  (Am. Compl.¶108-

13.)  In fact, Intelligen's Complaint appears to acknowledge it is only a restatement of Count II's

allegation that dVentus failed to return equipment to Intelligen under Section 13.4 of the Supply

Agreement.[12]  (Am. Compl.¶106.)  Accordingly, Count III of Intelligen's Complaint should be

dismissed for failure to state a claim for replevin.

                                      Respectfully submitted,

                                      SCHIFF HARDIN LLP

Dated: March 16, 2015           s/ Frederick R. Juckniess
                                      Frederick R. Juckniess  (*Pro Hac Vice*)
                                      350 S. Main Street, Ste. 210
                                      Ann Arbor, MI  48104
                                      734-222-1504 (Phone)
                                      734-222-1501 (Fax)
                                      rjuckniess@schiffhardin.com

                                      *Attorneys for Defendant dVentus Technologies LLC*

---

[12] "In violation of Section 13.4 of the Agreement, dVentus failed to return the Parts to Intelligen
upon termination of the Agreement."  (Am. Compl.§106.)

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 16, 2015 a copy of the foregoing was filed with the Court using the ECF system which will send notification of such filing to all attorneys of record.  I have also caused the foregoing to be served via first-class U.S. Mail to Joaquin Ezcurra and Danielle Lesser, at Morrison Cohen LLP, 909 Third Avenue, New York, NY 10022-4784.

By:  /s/ Frederick R. Juckniess
Frederick R. Juckniess

45685-0000

AA\200120106.1