UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTELLIGEN POWER SYSTEMS, LLC, | CIVIL ACTION NO. 14-cv-07392-PAE |
| Plaintiff, | HON. JUDGE PAUL A. ENGELMAYER |
| -against- | |
| dVENTUS TECHNOLOGIES, LLC, | |
| Defendant. | |

dVENTUS' REPLY TO PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION OF DEFENDANT'S MOTION TO DISMISS

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES.................................................................................................. ii

INTRODUCTION ..............................................................................................................1

I.      INTELLIGEN'S FRAUDULENT INDUCEMENT CLAIM IS LEGALLY
        AND FACTUALLY DEFICIENT AND SHOULD BE DISMISSED (COUNT I).........1

II.     PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST THE DEFENDANT
        FOR BREACH OF CONTRACT (COUNT II)...............................................................7

CONCLUSION...................................................................................................................10

# INDEX OF AUTHORITIES

## CASES

*Ambac Assurance Corp. v. DLJ Mortgage Capital, Inc.,*
  102 A.D.3d 487, 956 N.Y.S.2d 891 (N.Y. App. Div. 2013) ...................................................... 6

*Braddock v. Braddock,*
  60 A.D.3d 84, 871 N.Y.S.2d 68 (1st Dep't 2009) .................................................................... 6

*Brown v. Lower Brule Cmty. Dev. Enter., L.L.C.,*
  No. 13-CV-7544 PKC, 2014 WL 5508645 (S.D.N.Y. 2014) .................................................. 7

*Caring Habits, Inc. v. Fund for the Pub. Interest, Inc.,*
  No. 11-CV-5768 NSR LMS, 2014 WL 7146041 (S.D.N.Y. 2014) ......................................... 7

*City of Omaha v. CBS Corp.,*
  No. 08 CIV. 10816(PKC), 2010 WL 1029290 (S.D.N.Y. 2010) ............................................ 5

*City of Omaha, Neb. Civilian Employees' Ret. Sys. v. CBS Corp.,*
  679 F.3d 64 (2d Cir. 2012) ..................................................................................................... 5

*Coolite Corp. v. American Cyanamid Co.,*
  52 A.D.2d 486 (N.Y. App. Div. 1976) ................................................................................. 2, 3

*Deerfield Communications v. Chesebrough-Ponds, Inc.,*
  68 N.Y.2d 954 (N.Y. 1986) ..................................................................................................... 3

*EED Holdings v. Palmer Johnson Acquisition Corp.,*
  387 F.Supp.2d 265 (S.D.N.Y. 2004) ........................................................................................ 3

*Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc., for instance,*
  665 F.Supp.2d 239 (S.D.N.Y 2009) ......................................................................................... 2

*Hunt Ltd. v. Lifschultz Fast Freight, Inc.,*
  889 F.2d 1274 (2d Cir. 1989) ................................................................................................... 7

*Lo Bosco v. Kure Eng'g Ltd.,*
  891 F.Supp. 1020 (D.N.J. 1995) .............................................................................................. 6

*Netto v. Rastegar,*
  No. 21 Civ. 4580(CM), 2012 WL 4336167 (S.D.N.Y. Sept. 20, 2012) .................................. 6

*Rombach v. Chang,*
  355 F.3d 164, 174 (2d Cir. 2004) ............................................................................................. 5

*Shively v. Mitchell,*
  No. 13 Civ. 2164, 2013 WL 5761498 (S.D.N.Y 2013) ........................................................... 6

## OTHER AUTHORITIES

Dismiss Am. Compl, *Pursuant to Fed. R. Civ. P.* , 12(b) (6) ......................................................... 4

## RULES

Fed. R. Civ. P. 9(b)....................................................................................................................... 4

Fed. R. Civ. P. 12(b)(6) and 9(b) ................................................................................................. 4

**INTRODUCTION**

Despite amending its Complaint, Plaintiff Intelligen Power Systems, LLC ("Intelligen")

failed to remedy the fatal deficiencies in its allegations against Defendant dVentus Technologies

LLC ("dVentus").  Intelligen has failed to allege a claim for fraudulent inducement that is

separate from a claim for nonperformance under the contract.  Intelligen has also failed to

provide any factual or legal support for its assertion that its fraud and contract claims are distinct.

Worse yet, Intelligen's entire breach of contract claim is based on an alleged violation of

a delivery date that is unambiguously an estimate, not a definitive contract term.  This Court

should find, as a matter of law, that no such contract term existed, and the alleged breach of

contract claim cannot, therefore, survive this 12(b)(6) motion to dismiss.

Intelligen has failed to remedy the deficiencies in its arguments, and its Amended

Complaint should be dismissed.

**I.     INTELLIGEN'S FRAUDULENT INDUCEMENT CLAIM IS LEGALLY AND
         FACTUALLY DEFICIENT AND SHOULD BE DISMISSED (COUNT I)**

Intelligen's Memorandum of Law in Opposition to Defendant's Motion to Dismiss

("Opposition") fails to demonstrate that this lawsuit is anything other than a bloated contract

dispute.  Intelligen offers a new theory that its fraud claims all relate to "the present status of

dVentus (and Gizaw) at the time the parties executed the Agreement," and not performance

under the Agreement.  (Intelligen's Mem. of Law in Opp'n to Def.'s Mot. to Dismiss 8.)  The

plain language of each of Intelligen's seven representations belies this argument.  The

representations read:

> a. dVentus had a facility in Ann Arbor, Michigan **where dVentus would
> assemble and test the Equipment for Intelligen**;
> b. dVentus possessed a generator and converter package designed for the wind
> turbine industry **which could be easily adapted to CHP**;

1

      c. dVentus had sufficient manpower and engineering expertise **to adapt its technology to CHP including the needs of Intelligen's customers, as well as the NYSERDA and Con Ed requirements**;

      d. dVentus employed over 40 design engineers who possessed the relevant experience **to ensure timely fabrication of the Equipment and to timely and promptly fulfill Intelligen's orders**;

      e. Gizaw personally had electrical engineering capability **sufficient to design and manufacture the Equipment**;

      f. dVentus had the capability of **configuring the Equipment for use with 208 Volt or 480 Volt**; and

      g. dVentus possessed the financial resources **to complete the design and manufacture of the Equipment**.

(Am. Compl.¶93., *emphasis added*.)

Each one of these alleged representations is forward looking and performance-based. Intelligen cites a number of cases to apparently support the proposition that fraudulent inducement of a written contract does not always merge with the contract to preclude an action for fraud. dVentus has never made any argument to the contrary. What dVentus has argued—and what Intelligen's cited cases demonstrate—is that Intelligen has clearly failed to state a claim that would permit both a fraudulent inducement claim and a contract claim.

Intelligen cites numerous cases in support of its arguments, but a closer examination reveals these cases to offer no such support for Intelligen. In *Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.,* for instance, the court dismissed the fraud theory that the defendant misrepresented its production capacity, which the court found was "not collateral to the contract but…essential terms of the contract." 665 F.Supp.2d 239, 253 (S.D.N.Y 2009). In *Coolite Corp. v. American Cyanamid Co.,* the court did not permit the contract claim and the fraud claim to continue in the same action; the court dismissed the contract claims, and allowed only the free-standing fraud claims to continue. 52 A.D.2d 486, 489 (N.Y. App. Div. 1976). The alleged representations in that case were indeed "representations of fact and not merely promises of

future action." *Id*. at 488.  There, the alleged fraud involved statements that American Cyanamid had already developed and tested the product that Coolite sought to purchase.  *Id*. at 487.

In *EED Holdings v. Palmer Johnson Acquisition Corp*., the court held that the plaintiff could allege both fraudulent inducement and breach of contract, because the counts were based on different contracts.  387 F.Supp.2d 265, 279 (S.D.N.Y. 2004).  The breach of contract claim was based on a Parent Guaranty executed by the parent company of the defendant,[1] whereas the fraud claim derived from inducing the plaintiff into entering a construction contract between the parties.  *Id*.  As such, the court noted that "the damages that [the plaintiff] seeks to recover in its fraud claim are distinct from the 'benefit of the bargain' damages sought in the contract claim." 387 F.Supp.2d at 271.  The *EED* plaintiffs did not attempt—as Intelligen is doing here—to simply double their contract damages, but rather sought unique damages under their fraud and contract claims.  This is an important distinction—in *Deerfield Communications v. Chesebrough-Ponds, Inc.*, the Court of Appeals of New York similarly allowed fraudulent inducement and contract claims to both stand only where "there was no duplication of damages." 68 N.Y.2d 954, 956 (N.Y. 1986).  Yet here, Intelligen seeks exactly the same damages for its breach of contract and fraudulent inducement claims.

To bolster its argument that its fraud and contract claims are distinct, Intelligen makes allegations about dVentus' Motion to Dismiss that also fail upon closer inspection.  Intelligen alleges:

> dVentus also cites Section 2.3 of the Agreement, under which dVentus covenanted and agreed "to possess and maintain ... the necessary capacity, machinery, personnel and resources to sell" the Equipment to Intelligen (Lesser Decl., Ex. 2 § 2.3), to argue that the misrepresentations became a "contractual requirement." dVentus Mem. at 10. But this argument fails. For example, the

---

[1] Unlike the current case, the *EED* parties had a contractual delivery date that was extended via change orders, so the date of delivery was not at issue in those proceedings.  *Id.* at *270.

> location of a dVentus facility in Ann Arbor (Lesser Decl., Ex. 1 ¶ 93(a)) is not the
> same as the "capacity, machinery, personnel and resources to sell" the Equipment,
> nor is the possession of a CHP-adaptable generator and converter package (*id.* ¶
> 93(b)) or Gizaw's engineering experience. *Id.* ¶ 93(e).

(Opp'n 10.)

However, this argument is nowhere to be found in the Motion to Dismiss, which actually

noted that one specific item in the Amended Complaint (Paragraph 93f) merged with one

specific item in the Agreement (Section 2.3):

> Moreover, Intelligen itself alleges that dVentus's capabilities became a
> contractual requirement (Am. Compl.¶55), and Intelligen even separately alleges
> that this contract provision was eventually breached. (Am. Compl.¶105.)
> Similarly, Intelligen alleges that dVentus represented, "dVentus had the capability
> of configuring the Equipment for use with 208 Volt or 480 Volt." (Am.
> Compl.¶93f.) The parties then contracted for the production of equipment with
> specified voltage, and there is no allegation how this expectation of future
> configuration was false.

(dVentus' Mot. To Dismiss Am. Compl, *Pursuant to Fed. R. Civ. P.* 12(b)(6) and 9(b) 10.)

Similarly, in an attempt to raise its pleadings to the standards required by Fed. R. Civ. P.

9(b), Intelligen weaves together disparate portions of its Amended Complaint that do not cohere.

The alleged misrepresentation that "Gizaw personally had electrical engineering capability

sufficient to design and manufacture the Equipment" is supported by no indication of when these

statements were made.  (Am. Compl.¶93e.)  Intelligen now claims that this allegation is

supported by its pleading that "Gizaw represented that dVentus had electrical engineering

expertise personally and in an email dated November 26, 2012."  (Opp'n 11-12; Am.

Compl.¶31.)  However, these two statements clearly do not contain the same allegation, despite

Intelligen's claim to the contrary.  (Opp'n 11-12.)  Intelligen alternately points to an April 13,

2003 meeting, in which Gizaw allegedly claimed "[h]e personally had electrical engineering

capability and was supported by a team of additional engineers."  (Am. Compl.¶41.)  Again,

this—on its face—does not support the alleged fraudulent statements made by dVentus.  Such

imprecision and incaution plague Intelligen's claims.

Intelligen also once again fails to sufficiently address the materiality of the fraudulent

inducement claims.  As an example, there are no facts to support the materiality of Daniel

Gizaw's ability to personally configure the generators.  Intelligen makes no claims that it

expected Gizaw to personally design or assemble the generators.  There are also no facts to

support the materiality of the alleged representation that dVentus employed thirty design

engineers, especially given Intelligen's own admission that it expected a team of six engineers to

work on its projects.  (Am. Compl.¶8.)

Further, Intelligen has failed to allege *any* facts that indicate the falsity of dVentus'

alleged representations.  Intelligen argues that it satisfies its burden to allege falsity by offering

only the conclusory statement that "These representations were false when made, and dVentus

knew of their falsity at the time they were made."  (Am. Compl.¶94.)  Intelligen contends that

this statement "must be presumed true on a motion to dismiss," and implies that it is under no

obligation to offer anything other than a conclusory statement of falsity unless there is

"documentary evidence to the contrary."  (Opp'n 13.)

This is not the standard.  This circuit holds that "[p]laintiffs 'must do more than say that

the statements ... were false and misleading; they must demonstrate with specificity why and

how that is so.'"  *City of Omaha v. CBS Corp.,* No. 08 CIV. 10816 (PKC), 2010 WL 1029290, at

*5 (S.D.N.Y. 2010*) aff'd sub nom. City of Omaha, Neb. Civilian Employees' Ret. Sys. v. CBS

Corp.*, 679 F.3d 64 (2d Cir. 2012), *citing Rombach v. Chang,* 355 F.3d 164, 172, 174 (2d Cir.

2004).  dVentus' alleged non-performance is the only possible basis for any "falsity" of

dVentus's statements that can be gleaned from the Amended Complaint.  But non-performance

alone cannot satisfy a plaintiff's burden to allege falsity.  *Netto v. Rastegar*, No. 21 Civ.

4580(CM), 2012 WL 4336167, at *6 (S.D.N.Y. Sept. 20, 2012); See *also Ergowerx*, 18 F.3d at

445-446 (*quoting Lo Bosco v. Kure Eng'g Ltd.*, 891 F.Supp. 1020, 1031 (D.N.J. 1995).

Intelligen has alleged no facts to demonstrate the falsity of dVentus' alleged representations.

Additionally, Intelligen appears to concede that it failed to allege factual allegations to

demonstrate reasonable reliance on dVentus' alleged representations.  Indeed, Intelligen now

appears to argue that it had no obligation to allege reasonable reliance at this stage.  (Opp'n 13.)

This argument is inconsistent with the proper legal standard.  *See, e.g., Shively v. Mitchell*, No.

13 Civ. 2164, 2013 WL 5761498, at *5 (S.D.N.Y 2013) (quoting *Braddock v. Braddock*, 60

A.D.3d 84, 871 N.Y.S.2d 68, 70 (1st Dep't 2009) (holding "a plaintiff must assert the

misrepresentation of a material fact…and that there was justifiable reliance and resulting

injury").  Intelligen further contends that it cannot provide such facts at this stage because "no

due diligence would have revealed the true state of dVentus' business."  (Opp'n 13.)[2]

Intelligen has failed to proffer a sustainable claim for fraudulent inducement.  Not only

does its claim fail because it is inextricable from the contract claim and does not allege falsity

and materiality, but also because it simply defies logic.  Intelligen claims that dVentus induced it

---

[2] This assertion is both factually and legally false.  Intelligen had a contractually bargained-for right to visit dVentus' facilities, but chose not to.  (Ex. 4 § 10.3.)  Furthermore, Intelligen's CEO David Lesser called dVentus' investors after relations with dVentus broke down.  Intelligen cannot now claim fraudulent inducement because it did not perform due diligence before entering into the contract.  *Ambac Assur. Corp. v. DLJ Mortgage Capital, Inc.,* 31 Misc. 3d 1208(A), 929 N.Y.S.2d 198 (N.Y. Sup. Ct. 2011)(dismissing fraudulent inducement claim, holding, "The fact that Ambac did due diligence after the alleged breach that it did not do before the closing shows that Ambac had the ability to discover the facts. Having failed to protect itself by available means, Ambac cannot now claim it was fraudulently induced") *on reargument,* 33 Misc. 3d 1208(A), 939 N.Y.S.2d 739 (N.Y. Sup. Ct. 2011) *rev'd sub nom. Ambac Assurance Corp. v. DLJ Mortgage Capital, Inc.,* 102 A.D.3d 487, 956 N.Y.S.2d 891 (N.Y. App. Div. 2013).

to enter into the contract to increase its prestige to gain funding.  dVentus' and Daniel Gizaw's

many accomplishes have already been cited in dVentus' filings.  It is unfathomable and illogical

that dVentus would seek funding by relying on a small contract with an unknown company

instead of relying on its many accomplishments and connections with world governments.

## II.     PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST THE DEFENDANT FOR BREACH OF CONTRACT (COUNT II)

Even if the Court were to accept Intelligen's factual allegations as true for the purposes of

this motion, Intelligen has failed to establish a breach of contract, because Intelligen has not—

and cannot—point to a term of the contract that has been breached.  Intelligen's entire claim is

built on dVentus' alleged breach of an inexistent contract term, an allegedly contractually-

obligated sixteen-week delivery date.  The Invoice's "Ship Date" section reads, "16 Wks **est**."

(Ex. 3 (emphasis added).)  The unambiguous plain language of the contract contradicts

Intelligen's claim, and as a matter of law, "[l]anguage whose meaning is otherwise plain does not

become ambiguous merely because parties urge different interpretations in litigation." *Caring*

*Habits, Inc. v. Fund for the Pub. Interest, Inc.*, No. 11-CV-5768 NSR LMS, 2014 WL 7146041,

at *4 (S.D.N.Y. 2014) (citing *Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d

Cir. 1989)).  It is well established that "[a] court should not interpret a contract in a manner that

would be . . . contrary to the reasonable expectations of the parties." *Brown v. Lower Brule*

*Cmty. Dev. Enter., L.L.C.,* No. 13-CV-7544 PKC, 2014 WL 5508645, at *4 (S.D.N.Y. 2014).

A sixteen-week delivery date was never established, which is evident by Intelligen's

consistent refusal to quote any such language from any document that comprises the contract

between the parties.  Moreover, each Complaint and brief Intelligen has submitted to this Court,

up to and including its Opposition, contradicts the assertion that there was a fixed 16-week

delivery date.  (Compl. ¶27; ¶36; ¶40; Am. Compl. ¶27; ¶36; ¶40; Opp'n 3.)

While Intelligen's argument that "under New York law…a contract should not be read to render any portion meaningless" is well-taken, it is also inapposite here.  (Opp'n 17.)  Intelligen argues that it is necessary to read the plain language of the contract to mean the opposite of what it says in order to avoid negation of several contract provisions.  (Opp'n 17.)  Again, the contract simply does not support this argument.  Because Intelligen now insists the contract wholly succeeds or fails based on the delivery date, dVentus must explicate the contract terms.

As Intelligen notes, the contract between the parties relies upon the Price Quotation,[3] Purchase Order, the Invoice, and the Supply Agreement.  The Price Quotation, Purchase Order, and Invoice governed one order for specified generator and inverter packages, while the Supply Agreement set forth the terms of the relationship between the parties moving forward, including the way in which orders would be placed.  (Ex. 1.)  The Supply Agreement called for Intelligen to submit quarterly forecasts of the units it would order from dVentus.  (Ex. 1 § 2.)  The parties would then agree on a delivery schedule (Ex. 1 § 2.1.2.).  The Supply Agreement further required Intelligen to submit, one month prior to needing delivery, "an updated delivery schedule" with the dates by which Intelligen required delivery of its open orders.  (Ex. 1 § 8.2.)  Section 8 of the Supply Agreement then provides dVentus a 4-week postponement period for delivery, as well as the consequences of failure to deliver.  (Ex. 1 § 8.4; 8.3.)[4]

The above procedure was not followed.  Intelligen never submitted a quarterly forecast.  Intelligen and dVentus never agreed on a delivery date.  Intelligen never submitted an updated

---

[3] Intelligen's inconsistent inclusion of the Price Quotation in the contract terms will be discussed in detail below.

[4] That Intelligen now contends the 16-week delivery date must be read as a firm contract term or else Section 8.3 would be negated is the height of irony.  Section 8.3 holds that dVentus' failure to deliver on time subjects dVentus to the liquidated damages clause of the Supply Agreement, Section 11.  Section 11 contains no liquidated damages clause.  Indeed, the entire Supply Agreement is devoid of such a clause.

delivery schedule.  All of this highlights the inexistence of a firm delivery date.  This procedure

was not followed for numerous reasons, namely because this order was to be the first of a series

of orders between the parties, with longer lead times and greater engineering requirements as the

parties worked out the specifications of the ordered items.  The Supply Agreement does not

crumble if the delivery date on the Invoice was an estimate, because the terms Intelligen points

to are irrelevant to the current proceedings.

Intelligen refuses to deny (again, because it cannot) that its own changes in specification

caused massive delays in the productions schedule.  (Opp'n 19.)  Instead of simply maintaining

its contention that it has no obligation to make any such denial, Intelligen provides a textually

insupportable interpretation of the contract.  Intelligen asserts that the Price Quotation somehow

indicates that Intelligen's changes in specification cannot affect the delivery schedule.  (Opp'n

19.)  This concept is nowhere to be found in the Price Quotation.  And furthermore, this

argument lacks any logical sense.  By this logic, Intelligen could change whatever specifications

it wanted to an order, at any time, and bear no responsibility for any delays those changes

caused.

As a side note, Intelligen's preceding argument is an exemplary illustration of Intelligen's

shifting definition of what comprises the contract.  Intelligen appears to have decided that

dVentus' Price Quotation is only a valid component of the contract when it supports Intelligen's

positions.  As noted in dVentus' Memorandum in Support of the Motion to Dismiss Amended

Complaint, Intelligen's Amended Complaint removed all reference to the Price Quotation in an

improper attempt to escape its dispositive effect on Intelligen's allegations.  (Am. Mot. 23.)

Now, in offering its assertion that Intelligen's changes to the specifications of the generators

could not, contractually, result in any delay in delivery, Intelligen cites to dVentus' Purchase

Order.  (Opp'n 19.)  Five pages later, noting dVentus' assertion that Intelligen's damage claims

are barred by the Price Quotation's Terms and Conditions, Intelligen asserts that it "does not

concede that the Price Quotation forms a part of the Agreement."  (Opp'n 24 n.9.)  Intelligen has

offered this Court shifting facts to support its shifting arguments, but the fact remains that

Intelligen has failed to point to a single contract term dVentus has violated.

## CONCLUSION

In light of Intelligen's failure to adequately plead Counts I, II and III in its Amended

Complaint, dVentus respectfully requests that this Court grant its Motion to Dismiss Intelligen's

Amended Complaint.


Respectfully submitted,

SCHIFF HARDIN LLP

Dated: April 13, 2015                    s/ Frederick R. Juckniess
                                         Frederick R. Juckniess  (*Pro Hac Vice*)
                                         350 S. Main Street, Ste. 210
                                         Ann Arbor, MI  48104
                                         734-222-1504 (Phone)
                                         734-222-1501 (Fax)
                                         rjuckniess@schiffhardin.com

                                         *Attorneys for Defendant dVentus Technologies LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2015 a copy of the foregoing was filed with the Court using the ECF system which will send notification of such filing to all attorneys of record.  I have also caused the foregoing to be served via first-class U.S. Mail to Joaquin Ezcurra and Danielle Lesser, at Morrison Cohen LLP, 909 Third Avenue, New York, NY 10022-4784.


By: /s/ Frederick R. Juckniess
Frederick R. Juckniess


45685-0000

AA\200122095.1

11