USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/12/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                            :
INTELLIGEN POWER SYSTEMS, LLC,                              :
                                                            :      14 Civ. 7392 (PAE)
                            Plaintiff,                      :
                                                            :      OPINION & ORDER
            -v-                                             :
                                                            :
dVENTUS TECHNOLOGIES LLC,                                   :
                                                            :
                            Defendant.                      :
                                                            :
------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

In this action, plaintiff Intelligen Power Systems, LLC ("Intelligen") brought claims for fraudulent inducement and breach of contract arising from the failure of defendant dVentus Technologies LLC ("dVentus") to deliver equipment under a supply contract, even when given more time than the parties had agreed upon.[1]  The case was litigated through a motion to dismiss and through substantial discovery, after which time dVentus's counsel was permitted to withdraw.  dVentus, a corporate entity that may not appear *pro se*, subsequently failed to secure substitute counsel, despite ample notice of its need to do so.  The Court entered default judgment for Intelligen as to liability and referred the case to the Honorable James C. Francis IV, United States Magistrate Judge, for an inquest into damages.

Before the Court is Judge Francis's October 15, 2015 Report and Recommendation, which is attached.  Dkt. 140 ("Report").  Judge Francis recommends the award of damages to Intelligen in the principal amount of $1,097,523.36, plus prejudgment interest in the amount of $69,533.68 for the period up to August 25, 2015, and further prejudgment interest on the

---

[1] Intelligen also brought a claim for replevin, which was dismissed.

principal amount calculated at 9% per year from August 26, 2015 to the date of judgment. For the reasons that follow, the Court adopts the Report, subject to very minor modifications as discussed below.

**I.      Background**

The Court assumes familiarity with the facts of this case, as set forth in the Court's decision on dVentus's motion to dismiss. *See* Dkt. 91, *reported at Intelligen Power Systems, LLC v. dVentus Technologies LLC*, No. 14 Civ. 7392 (PAE), 2015 WL 3490256, at *1–3 (S.D.N.Y. June 2, 2015). The Court briefly recounts the relevant procedural history.

On May 19, 2015, two days before oral argument on the motion to dismiss, dVentus's counsel moved to withdraw. Dkt. 76. On May 21, 2015, following oral argument and an *ex parte* colloquy with dVentus's counsel, the Court denied the motion to withdraw pending the completion of certain discovery. Dkt. 82. On June 2, 2015, the Court denied in part and granted in part dVentus's motion to dismiss, allowing Intelligen's claims of fraudulent inducement and breach of contract to proceed. *See Intelligen*, 2015 WL 3490256, at *15. On August 7, 2015, the Court granted defense counsel's motion to withdraw, effective August 21, 2015. Dkt. 125, at 4. The Court's order noted that if successor counsel were not secured by that date, it would entertain an immediate application for a default judgment. *Id.* No successor counsel has appeared, although the Court has received several messages from dVentus's principal, Daniel Gizaw, to the effect that he purportedly lacks the funds necessary to secure counsel. *See* Dkt. 127, 130, 135, 141.

On September 11, 2015, the Court held a show cause hearing at which no counsel for dVentus appeared, and the Court that day entered default judgment as to liability in favor of Intelligen. Dkt. 131. The Court referred the case to Judge Francis for an inquest into damages. Dkt. 132.

Intelligen submitted proposed findings of fact and conclusions of law on September 30, 2015. Dkt. 133. Intelligen also filed a declaration of Danielle C. Lesser on October 2, 2015, which contained exhibits attesting to its damages. Dkt. 134 ("Lesser Decl."). Judge Francis issued the Report on October 15, 2015. Dkt. 140.

## II. Discussion

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Ruiz v. Citibank, N.A.*, No. 10 Civ. 5950 (KPF) (RLE), 2014 WL 4635575, at *2 (S.D.N.Y. Aug. 19, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC) (AJP), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009), *aff'd* 453 Fed. App'x 88 (2d Cir. 2011)); *see also Mims v. Walsh*, No. 04 Civ. 6133 (BSJ) (FM), 2012 WL 6699070, at *2 (S.D.N.Y. Dec. 23, 2012) (quoting *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006)).

As neither party has submitted objections to the Report, review for clear error is appropriate. Because the Report explicitly states that "[f]ailure to file timely objections will preclude appellate review," Report at 10, both parties' failure to object operates as a waiver of appellate review. *See Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (summary order) (quoting *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992)).

Careful review of Judge Francis's thorough and well-reasoned Report reveals that only the slightest modifications are necessary.

First, the Report sets forth two slightly different principal damages amounts: The introduction says $1,100,098.80, while the conclusion says $1,097,523.36. *Compare* Report at

1, *with* Report at 10. Tallying the damages figures approved in the body of the opinion, with which there is no clear error, the Court finds that the correct total is $1,097,523.36.

Second, the Court finds that the Report slightly miscalculated the prejudgment interest. Because of its erroneous finding that nine months rather than eight months elapsed between January and the end of August 2015, *see id.* at 9, the Report slightly overestimated the amount of prejudgment interest that accrued as of August 25, 2015 (ignoring the issue of whether the last six days of August are appropriately counted). That amount should be $69,511.6, not $69,533.68. Nevertheless, because the ultimate amount of prejudgment interest to be awarded must reflect the continued accrual of prejudgment interest between August 25, 2015 and the date of final judgment, as the Report acknowledges in its conclusion, *see* Report at 10, this slight miscalculation as to the intermediate total as of August 25, 2015 would not have affected the ultimate award.

Finally, the Report notes that Intelligen seeks to recover its litigation costs and directs Intelligen to submit a Bill of Costs to the Clerk of Court. Report at 9 n.5. However, it is not evident to the Court whether Intelligen is seeking litigation costs *or* attorneys' fees. While withholding judgment on the availability of such relief, the Court notes that the parties' contract does not appear to contain a fee-shifting provision, and that "New York law does not permit fee-shifting in breach of contract cases, unless specifically provided in the contract." *Jia Chen v. Antel Commc'ns, LLC*, No. 14 Civ. 6629 (SJF), 2015 WL 5793404, at *7 (E.D.N.Y. Sept. 30, 2015) (citing *Equitable Lumber Corp. v. IPA Land Dev. Corp.*, 38 N.Y.2d 516 (N.Y. 1976)); *see also Wright v. Selle*, 811 N.Y.S.2d 525, 527 (4th Dep't 2006) (finding "no basis" for defendants' claim for attorneys' fees where defendants' counterclaim of fraudulent inducement survived). Therefore, Intelligen is directed to file a motion for attorneys' fees and costs, if it desires to do

so, by November 19, 2015, explaining the legal basis for seeking such relief. If Intelligen does not file such a motion, the Court expects to direct entry of final judgment forthwith.

## CONCLUSION

For the foregoing reasons, the Court adopts the Report's recommendation that Intelligen be awarded damages in the principal amount of $1,097,523.36. The Court further adopts the recommendation of an award of prejudgment interest at an annual rate of 9%, calculated for each item of damages (appropriately modified pursuant to Judge Francis's Report) from the appropriate start date, as identified in Exhibit 12 of the Lesser declaration, to the date of judgment. The Court further directs Intelligen to file a motion for attorneys' fees and costs, if any, by November 19, 2015.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: November 12, 2015
      New York, New York

Case 1:14-cv-07392-PAE-JCF Document 142 Filed 01/12/15 Page 16 of 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - :
INTELLIGEN POWER SYSTEMS, LLC,   : 14 Civ. 7392 (PAE) (JCF)
                                 :
            Plaintiff,           :     REPORT AND
                                 :     RECOMMENDATION
    - against -                  :
                                 :
dVENTUS TECHNOLOGIES LLC,        :
                                 :
            Defendant.           :
- - - - - - - - - - - - - - - - - - :
TO THE HONORABLE PAUL A. ENGELMAYER, U.S.D.J.:

Plaintiff Intelligen Power Systems, LLC ("Intelligen") claims that defendant dVentus Technologies, LLC ("dVentus") fraudulently induced it to enter into a supply contract and then breached that contract. After entering a judgment of default against dVentus on September 11, 2015, the Honorable Paul A. Engelmayer, U.S.D.J., referred the case to me for a calculation of damages. I held an inquest on October 5, 2015; dVentus did not appear. For the reasons set forth below, the plaintiffs should be awarded damages in the amount of $1,100,098.80 plus statutory interest.

Background[1]

Intelligen designs, fabricates, installs, and maintains pre-packaged cogeneration equipment, which simultaneously creates electricity and usable heat from a single fuel source. Intelligen Power Systems, LLC v. dVentus Technologies LLC, No. 14 Civ. 7392, 2015 WL 3490256, at *1 (S.D.N.Y. June 2, 2015); (Amended Complaint ("Am. Compl."), ¶ 17; Plaintiff Intelligen Power Systems, LLC's

---

[1] These facts are derived from Judge Engelmayer's decision on dVentus' motion to dismiss, information submitted by the plaintiff, and testimony at the inquest.

1

Proposed Findings of Fact and Conclusions of Law ("Proposed Findings"), ¶ 3). In order to qualify for incentives from New York State, Intelligen needed specialized synchronous generators and inverters (the "Equipment") for their cogeneration products. Intelligen, 2015 WL 3490256, at *1; (Proposed Findings, ¶ 5). dVentus, a renewable energy technology company, contacted Intelligen in June 2012, seeking to supply Intelligen with the Equipment. (Am. Compl., ¶¶ 20, 22). Over the course of approximately the next nine months, dVentus had numerous communications with Intelligen focused on "convincing Intelligen that dVentus readily possessed the design, engineering and manufacturing capabilities to produce the Equipment." (Am. Compl., ¶ 26). During this period, dVentus made certain material misrepresentations, stating that

> 1. dVentus had a facility in Ann Arbor, Michigan where dVentus would assemble and test the Equipment for Intelligen;
>
> 2. dVentus possessed a generator and converter package designed for the wind turbine industry which could be easily adapted to [production of combined heat and power ("CHP")];
>
> 3. dVentus had sufficient manpower and engineering expertise to adapt its technology to CHP including the needs of Intelligen's customers, as well as the . . . requirements [to qualify for incentives]; and
>
> 4. dVentus had the capability of configuring the Equipment for use with 208 Volt or 480 Volt.

Intelligen, 2015 WL 3490256, at *13.

Relying on these misrepresentations, Intelligen entered into an agreement with dVentus in May 2013. (Am. Compl., ¶¶ 93-97). Pursuant to the agreement, dVentus was to provide Intelligen with

2

Intelligen's Equipment requirements, with the first shipment to be made within sixteen weeks of the date of the agreement so that Intelligen could install its cogeneration system in a development being built by a real estate company, Avalon Bay. Intelligen, 2015 WL 3490256, at *2; (Proposed Findings, ¶¶ 6-8; Transcript dated Oct. 5, 2015 ("Tr.") at 9). dVentus failed to deliver the Equipment within sixteen weeks; indeed, although the delivery date was repeatedly pushed back -- to as late as February 2014 -- the Equipment never materialized. Intelligen, 2015 WL 3490256, at *3; (Proposed Findings, ¶ 9). Intelligen terminated the agreement on April 5, 2014. (Declaration of Danielle C. Lesser dated Aug. 25, 2015 ("Lesser Decl."), ¶ 33).

Discussion

A. Liability

Where a defendant has defaulted, all of the facts alleged in the complaint, except those relating to the amount of damages, must be accepted as true. See Transatlantic Marine Claims Agency v. Ace Shipping Corp., 109 F. 3d 105, 108 (2d Cir. 1997); Keystone Global LLC v. Auto Essentials, Inc., 12 Civ. 9077, 2015 WL 224359, at *3 (S.D.N.Y. Jan. 16, 2015) (citing City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011). Nonetheless, a court "must still satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed." Jemine v. Dennis, 901 F. Supp. 2d 365, 373 (E.D.N.Y. 2012). That analysis is already complete, as Judge Engelmayer has determined that Intelligen's Amended Complaint states claims for fraudulent

inducement and breach of contract. Intelligen, 2015 WL 3490256, at *8, 15.

B. Damages

Once liability has been established, the plaintiff must provide evidence establishing the amount of damages with reasonable certainty. Transatlantic Marine Claims Agency, 109 F.3d at 111. Intelligen claims two types of damages: out-of-pocket costs incurred because dVentus failed to perform the contract and lost profits.

Under New York law,[2] out-of-pocket expenses are recoverable as damages for fraudulent inducement as well as for breach of contract. See Sofi Classic S.A. de C.V. v. Hurowitz, 444 F. Supp. 2d 231, 247 (S.D.N.Y. 2006) (applying New York law). Intelligen claims damages only for costs it would not have incurred had dVentus performed under the contract. (Tr. at 20). For example, it seeks to recover damages for time spent or costs incurred in connection with:

- working with dVentus to see if it was capable of manufacturing the Equipment, and once it was clear that the company could not do so, searching for a new manufacturer for the required equipment (Lesser Decl., ¶ 22; Tr. at 7-8, 11);

- reconfiguring or modifying new component parts for installation (Lesser Decl., ¶ 22; Tr. at 11-14; Invoice dated Jan. 28, 2015, attached as part of Exh. 10 to Lesser Decl., at 19);

- testing replacement equipment to ensure it functioned properly (Lesser Decl., ¶ 22; Tr. at 15-16);

---

[2] The parties agree that New York law governs this action. Intelligen, 2015 WL 3490256, at *4.

- modifying new equipment that had different dimensions than the dVentus equipment was to have (Lesser Decl., ¶ 22; Tr. at 17; Invoice dated Jan. 28, 2015, attached as part of Exh. 10 to Lesser Decl., at 19);

- purchasing and installing extra equipment made necessary by dVentus' breach (Lesser Decl., ¶ 22; Tr. at 18-20; Invoice dated Aug. 29, 2014, attached as part of Exh. 10 to Lesser Decl., at 3; Invoices dated Sept. 19, 2014; Oct. 29, 2014; Nov. 7, 2014, attached as part of Exh. 10, at 6-9; Invoices dated Nov. 7, 2014; Nov. 26, 2014, attached as part of Exh. 10 to Lesser Decl., at 11, 18; Letter of Robert Caldari dated Dec. 2, 2014, attached as part of Exh. 10 to Lesser Decl., at 16; Invoice dated Sept. 23, 2014, attached as part of Exh. 10 to Lesser Decl., at 10; Invoice dated Oct. 17, 2014, attached as part of Exh. 10 to Lesser Decl., at 13; Invoice dated July 7, 2014, attached as part of Exh. 10 to Lesser Decl., at 14; Invoices dated April 23, 2014; May 7, 2014, attached as part of Exh. 10 to Lesser Decl., at 26-27);

- providing equipment and deposits to dVentus that were never returned (Lesser Decl., ¶ 22; Tr. at 20-21, 30).

In total, Intelligen has presented documentary evidence and testimony supporting its claim for out-of pocket damages in the amount of $668,820.00. (Lesser Decl., ¶ 24; Invoices attached as Exh. 10 to Lesser Decl.; Tr. at 20, 31-34).

Lost profits are also a proper component of damages for breach of contract. See, e.g., Kasem v. Philip Morris, USA, 244 A.D.2d 532, 533, 664 N.Y.S.2d 469, 470 (2d Dep't 1997) (collecting cases). Intelligen first claims profits that it would have realized from from a maintenance contract for the equipment it installed at the Avalon Bay project.[3] (Tr. at 21-22). Intelligen asserts that dVentus' breach caused a sixteen-month delay in the commencement of

---

[3] Maintenance agreements of at least five years are mandated by the New York State Energy Research and Development Authority in order for designated incentives to be payable, and such agreements typically last up to ten years. (Tr. at 21, 23).

5

that contract and claims a total of $49,056.00 as damages for this delay, based on a profit of 40% of the maintenance contract price (pro-rated for sixteen months). (Tr. at 21-23, 26; Lesser Decl., ¶ 25). But Intelligen has admitted that it currently performs maintenance on the subject equipment at that development -- albeit pursuant to an agreement that is currently unsigned -- and that the arrangement is to last for at least five years. (Tr. at 22-24). Therefore, Intelligen did not lose any profit from the delay; it will still realize the full value of a five-year maintenance contract on its equipment. (Tr. at 24-25). Instead, the delay damaged Intelligen only insofar as it was deprived of the use of the profit that would have been realized sixteen months sooner had dVentus performed.

Damages for loss of the use of funds can be estimated by calculating the interest on the relevant amount at the statutory interest rate. See, e.g., Byblos Bank Europe v. Sekerbank Turk Anonym Syrketi, 49 A.D.3d 288, 288, 853 N.Y.S.2d 51, 52 (1st Dep't 2008). New York has set 9% per year as a presumptively reasonable interest rate. New York Civil Practice Law and Rules ("CPLR") § 5004; Abir v. Malky, Inc., 59 A.D.3d 646, 650, 873 N.Y.S.2d 350, 354 (2d Dep't 2009). Here, as payment on the maintenance contract is made in monthly installments (Tr. at 23), Intelligen would have realized $3,066.00 in profit per month on the contract. In the case of pre-judgment interest, which is also a remedy to "compensate the wronged party for the loss of use of the money," J. D'Addario & Co. v. Embassy Industries, Inc., 20 N.Y.3d 113, 117,

957 N.Y.S.2d 275, 277 (2012), where damages are incurred at different times (such as damages from breach of an installment contract), interest may be "computed . . . upon all of the damages from a single reasonable intermediate date," CPLR § 5001(b). Thus, to compute the cost of Intelligen's loss of the use of the profit that would have been realized over the course of the sixteen-month delay, interest may be computed from a midpoint -- that is, for a period of eight months. Eight months of interest (at 9% per year) on $49,056.00 amounts to $2,943.36.

In addition, Intelligen claims lost profit from Avalon Bay's cancellation of Intelligen's participation in a second project. According to Intelligen, it had an ongoing relationship with Avalon Bay to supply cogeneration equipment for new real estate developments, and was specified in project documents related to the second development. (Tr. at 27-29; Lesser Decl., ¶ 31; Correspondence concerning Willoughby Square development ("Willoughby Square Correspondence"), attached as Exh. 11 to Lesser Decl.). dVentus' failure to perform under its contract with Intelligen caused Avalon Bay to sever its relationship with Intelligen for the second project, which in turn cost Intelligen profit that would have been realized from the sale of the equipment and from the operation and maintenance of that equipment. (Tr. at 27-30; Lesser Decl., ¶ 31). The profit from the sale of equipment is based on estimates Intelligen supplied to the contractors of the second project. (Tr. at 27-29, 34-36; Willoughby Square Correspondence). The profit from the maintenance contract for that

project is 40% of the total maintenance contract price. (Lesser Decl., ¶ 22). Intelligen has established damages from the cancelled second Avalon Bay project in the amount of $241,800.00 from the cancelled sale of equipment, and $183,960.00 from the maintenance contract. (Lesser Decl., ¶ 25). I therefore recommend awarding Intelligen $428,703.36 (i.e., $241,800.00 + $183,960.00 + $2,943.36) in lost profits.

### C.  Interest

> In breach of contract cases where parties do not specify the exclusive remedy, CPLR 5001(a) requires that statutory interest be paid. CPLR 5001(a) states that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract." The plain language of CPLR 5001(a) "mandates the award of interest to verdict in breach of contract actions."

J. D'Addario, 20 N.Y.3d at 117, 957 N.Y.S.2d at 277 (alteration in original) (quoting Spodek v. Park Property Development Associates, 96 N.Y.2d 577, 581, 733 N.Y.S.2d 674, 676 (2001)). Interest is calculated from the date the cause of action accrues, except that interest on damages incurred after that date is calculated either "upon each item from the date it was incurred," or, as noted above, on the full amount of damages from an intermediate date. CPLR § 5001(b).

For damages incurred prior to the termination of the agreement, Intelligen has calculated interest at 9% from April 5, 2014, fifteen days after dVentus failed to cure its breach, until August 25, 2015. (Supply Agreement dated May 8, 2013, attached as Exh. 4 to Lesser Decl., ¶ 13.3 ("Either party may terminate this Agreement if the other party commits a material breach of this

8

Agreement that remains uncured for fifteen (15) days after written notice of the material breach is delivered to such breaching party."); Lesser Decl., ¶ 33; Intelligen Summary Damages Caused by dVentus ("Damages Summary"), attached as Exh. 12 to Lesser Decl.). For those damages post-dating the termination, Intelligen has calculated interest from the date each item was incurred. (Lesser Decl., ¶ 33; Damages Summary). Intelligen asserts it is entitled to $72,190.00 for the period up to August 25, 2015. (Lesser Decl., ¶ 33).

That is an acceptable manner to calculate pre-judgment interest on the damages, with the exception that the principal damages amount for the loss from the sixteen-month delay on the first Avalon Bay project should be cut, as discussed above, from $49,056 to $2,943.36. Intelligen asserts it incurred those damages on January 1, 2015.[4] (Damages Summary). Interest calculated at 9% per year on $2,943.36 for approximately nine months (the beginning of January 2015 to the end of August 2015) equals $198.68, rather than the $2,855.00 Intelligen claims. (Damages Summary). Incorporating this correction to the interest calculation (i.e., $72,190.00 - 2,855.00 + 198.68) yields a result of $69,533.68.[5]

---

[4] I assume that is a "reasonable intermediate date," as it cannot be the date upon which the maintenance contract would have begun; a sixteenth-month delay would mean that Intelligen would not perform on the maintenance contract until well into 2016. However, testimony at the inquest indicates that both Intelligen and Avalon Bay are currently performing under the maintenance agreement. (Tr. at 22-23).

[5] Intelligen also seeks to recover the litigation costs incurred in this action. (Lesser Decl., ¶ 34 & Exh. 13). To do so, it should submit a Bill of Costs to the Clerk of Court.

Conclusion

For the foregoing reasons, I recommend awarding Intelligen damages in the principal amount of $1,097,523.36 plus prejudgment interest in the amount of $69,533.68 for the period up to August 25, 2015, and interest on the principal amount calculated at 9% per year from August 26, 2015 to the date of judgment.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Paul A. Engelmayer, Room 2201, 40 Foley Square, New York, New York 10007, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         October 15, 2015

Copies transmitted this date to:

Danielle C. Lesser, Esq.
Joaquin J. Ezcurra, Esq.
Morrison Cohen LLP
909 Third Ave.
New York, NY 10022

Daniel Gizaw
dVentus Wind Technologies, P.L.C.
Lafto-Lebu Industry Zone
P.O. Box 1110
Addis Ababa, Ethiopia

danielg@dventus.com

11